UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

v.

PATRICK JAMES and
EDWARD JAMES,

Defendants.

Crim. Action No.: 26-CR-29 (AT)

---

**REPLY IN SUPPORT OF MOTION TO QUASH
AND PRECLUDE USE OF EVIDENCE OBTAINED THROUGH
POST-INDICTMENT GRAND JURY SUBPOENA**

## PRELIMINARY STATEMENT

Defendant Patrick James respectfully submits this reply memorandum in further support of his motion (the "Motion") to quash the grand jury subpoena (the "Subpoena") issued to Cooperative Title Agency of Florida ("CTA"), and to preclude the Government's use of any evidence obtained in response thereto.

## ARGUMENT

### I.    Mr. James Has Standing to Challenge the Subpoena For Grand Jury Abuse

The Government incorrectly argues that Mr. James lacks standing to challenge the Subpoena because it "is not directed to him or a business he controls" and does not "call for materials over which [he] may assert a legal privilege." ECF 37 at 2 ("Opp."). The Second Circuit has long recognized, however, that a criminal defendant has standing—independent of any claim of privilege—to challenge a subpoena issued to a third party on the ground that it constitutes an abuse of the grand jury process. *See In re Grand Jury Subpoena Duces Tecum Dated January 2, 1985 (Simels)*, 767 F.2d 26, 30 (2d Cir. 1985) (granting a defendant's motion to quash a subpoena issued to a third party "as an abuse of the grand jury process" where the subpoena sought only non-privileged materials related to the defendant); *United States v. Raphael*, 786 F. Supp. 355, 358–59 (S.D.N.Y. 1992) (collecting grand jury abuse cases and ordering *in camera* review of transcripts of non-party grand jury testimony based on defendant's motion).

The Government's argument conflates two distinct principles. Privilege-based standing protects a movant's interest in preventing the disclosure of privileged information by a third party. Standing to challenge grand jury abuse, by contrast, arises from "the harm to [the movant's] interests as a defendant in a criminal trial and as a victim of a systematic abuse of the powers of the grand jury." *In re Grand Jury Proc.*, 814 F.2d 61, 66 (1st Cir. 1987) (granting standing based on allegations of grand jury abuse). As the Second Circuit has explained, "[u]nlike motions to

2

quash that seek to preserve privileges of the movant against possible disclosure by a third-party witness, . . . motions that allege improper use of the grand jury for trial preparation ultimately seek to prevent trial prejudice." *United States v. Punn*, 737 F.3d 1, 9–10 (2d Cir. 2013) (holding that an order denying a motion to quash for grand jury abuse is not immediately appealable under the collateral order doctrine). Courts in this District treat privilege-based challenges and grand jury abuse claims as separate and independent grounds for standing. *See United States v. Bergstein*, No. 16 Cr. 746 (PKC), 2017 WL 4535944, at *1–2 (S.D.N.Y. Oct. 10, 2017) (analyzing separately the issues of (1) whether a third-party subpoena should be quashed based on grand jury abuse, and (2) whether the movant had standing to move to quash the subpoena on the basis of a claimed privilege).

The Government's authorities do not suggest otherwise. The principal case it relies on— *In re Grand Jury Subpoena Duces Tecum Dated May 9, 1990*, 741 F. Supp. 1059 (S.D.N.Y. 1990)—does not meaningfully address the issue of third-party standing. That decision primarily addressed a defendant's motion to quash a subpoena issued *to him* in connection with an investigation of additional defendants. *Id.* at 1060. In a single footnote, the court noted that the defendant had also submitted a letter motion seeking to quash a subpoena issued to a third party and denied that request for lack of standing. *Id.* at 1060 n.1. The footnote contains no analysis of grand jury abuse and relies only on cases addressing privilege-based challenges to third-party subpoenas. *See id.* (first citing *Ponsford v. United States*, 771 F.2d 1305, 1308 (9th Cir. 1985); and then *Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2d Cir. 1975)). At most, therefore, the footnote is *dicta*. In any event, a passing footnote that neither analyzes nor acknowledges controlling Second Circuit authority in *Simels* cannot overcome the settled rule that

3

defendants may challenge third-party subpoenas issued as part of an abuse of the grand jury process.

The Government's remaining authorities fare no better.  None involve an already-indicted criminal defendant seeking to quash a subpoena for grand jury abuse.  *See In re Subpoenas to Local 478, Int'l Union of Operating Engineers & Benefit Funds*, 708 F.2d 65, 72 (2d Cir. 1983) (addressing standing to challenge a subpoena on the basis of "constitutional, statutory, or common law privilege"); *Langford*, 513 F.2d at 1126 (a civil case decided under Federal Rule of Civil Procedure 45(b)).

Finally, the Government's position would leave criminal defendants without any meaningful remedy for grand jury abuse.  If standing existed only where a defendant could assert privilege, prosecutors could evade judicial review simply by directing subpoenas to third parties.  That is not the law.  As *Simels*, *Calk*, and numerous other decisions make clear, a defendant's ability to challenge misuse of the grand jury derives from both the Court's supervisory authority over the grand jury and the defendant's constitutional right to a fair trial.  *See United States v. Calk*, 87 F.4th 164, 186 (2d Cir. 2023) ("[R]elative to defendants, prosecutors already have significantly greater powers and leverage to gather evidence in preparation for trial. And, without effective safeguards, prosecutors could otherwise abuse the grand jury subpoena and skirt the limits imposed on discovery."); *United States v. Fisher*, 455 F.2d 1101, 1105 (2d Cir. 1972) ("[T]he grand jury is not meant to be the private tool of a prosecutor.").  The Government's standing argument should be rejected.

## II.    The Government Has Failed to Rebut Mr. James's Showing of Grand Jury Abuse

Mr. James has more than met his burden to overcome the "presumption of regularity" that ordinarily attaches to grand jury proceedings.  *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 300–01 (1991).  He has presented the kind of "concrete allegations of grand jury abuse" required

to rebut that presumption. *Calk*, 87 F.4th at 186 (quoting *United States v. Leung*, 40 F.3d 577, 582 (2d Cir. 1994)). The burden therefore shifts to the Government to "come forward with evidence of specific grand jury activity" demonstrating a legitimate investigative purpose. *Id*. The Government has not done so. Instead, it offers only conclusory assertions that fail to explain why the Subpoena was issued or what legitimate investigation it purportedly advances.

### A. The Timing and Sequence of Events Demonstrate an Irregularity

The Government dismisses the timing of the Subpoena by invoking the general rule that post-indictment grand jury subpoenas are "presumed valid." Opp. at 4. But a presumption is only a starting point. It can be overcome by concrete evidence that the grand jury is being used for an improper purpose. *See Simels*, 767 F.2d at 29 ("The timing of the subpoena casts significant light on its purposes."). As the Second Circuit recently emphasized, "[e]nsuring the regularity of the grand jury process is especially important because of the risks for abuse that inhere in proceedings over which trial and appellate courts rarely have insight." *Calk*, 87 F.4th at 186. Simply invoking the presumption of regularity does not resolve the question of whether the presumption has been rebutted here.

The undisputed chronology demonstrates that it has. The Indictment was returned on January 27, 2026. The sale of the Property closed four days earlier, on January 23, 2026. The Subpoena followed less than a month later, on February 25, 2026. And the Subpoena's temporal scope is limited to January 1, 2026, through the present—a period of less than two months that falls entirely *after* the seven-year conspiracy alleged in the Indictment (2018–2025). This timeline does not suggest an investigation into new criminal conduct. Rather, it reflects targeted discovery into a single, post-conspiracy asset transaction—the very type of information relevant to the Government's forfeiture theory and its trial narrative that Mr. James personally enriched himself from the alleged scheme. *See* Indictment ¶¶ 28, 35, 57–59.

Additionally, the Subpoena is replete with factual errors, further undermining the Government's assertion that it was issued in furtherance of an investigation into additional charges or additional defendants. The Government purports to be conducting a serious investigation, yet the names of the trustees identified on the Subpoena are backwards, apparently copied from publicly available records on the Geauga County Auditor's website. *See* S. Hartman Decl., Ex. 1, ECF 29-1 at 4 (seeking production of all documents from any property in the name of or associated with "Haught Thomas Trustee" or "Laufenberg Gary Trustee").

The Subpoena also reflects a fundamental misunderstanding of the individuals and entities involved. The Gary Laufenberg who was served the Subpoena was involved in the underlying transaction but does not work for CTA. The Government appears to have identified a "Gary Laufenberg" as a participant in the transaction and, on that basis, directed the Subpoena to CTA after determining that an individual with that name is affiliated with the company. In fact, the Gary Laufenberg associated with CTA is not the individual involved in the transaction, but rather his father, who shares the same name and had no role in the transaction. The Government also sent a second, identical error-ridden subpoena a few days later, on March 9, 2026, to a different address. Taken together, these mistakes underscore that the Subpoena was not issued as part of a careful or legitimate investigative effort, but instead reflects a cursory and misinformed attempt to obtain materials for use in the pending prosecution.

### B.      The Government Offers No Defense of the Pretextual Securities Fraud Citations

The Government's opposition is notably silent on the substance of Mr. James's argument regarding the pretextual inclusion of securities fraud citations. As explained in the Motion, the securities fraud provisions cited in the Subpoena—15 U.S.C. §§ 78j(b) and 78ff—have no conceivable application to documents held by a Florida title agency relating to the sale of a

personal residence in Ohio.  The Government does not dispute this.  Instead, it offers only the generic assertion that Mr. James "cannot dismiss the relevance of that statute simply by speculating what the requested records may show."  Opp. at 4.

But this is not speculation.  It is a straightforward application of the securities fraud statutes to the undisputed facts.  Section 10(b) of the Securities Exchange Act prohibits fraud "in connection with the purchase or sale of any security."  15 U.S.C. § 78j(b).  A residential real estate transaction is not a securities transaction and bears no relationship to the purchase or sale of securities.  The Government offers no explanation—because none exists—of how securities fraud statutes could relate to routine title-company records generated in connection with a home sale.

The Second Circuit confronted a similar effort to mask trial preparation as investigation in *Simels*.  There, after the defendant objected to a post-indictment trial subpoena, the Government simply substituted a grand jury subpoena seeking the same evidence.  *See Simels*, 767 F.2d at 29. The court rejected the maneuver, concluding that the substitution did not "signif[y] a shift in the uses to which the government intended to put the information sought."  *Id.* at 30.  The same logic applies here.  Appending inapplicable statutory citations to a subpoena does not transform trial preparation into legitimate investigation.

### C. The Documents Sought Could Not Plausibly Support New Charges

The Government argues that it would be "remarkable if a defendant could frustrate a grand jury's work simply by decreeing that the evidence sought would not be useful to an investigation." Opp. at 4.  But Mr. James does not seek to "decree" anything.  He asks the Court to apply the burden-shifting framework the Second Circuit has established for evaluating claims of grand jury abuse.  *See Calk*, 87 F.4th at 186.

The Government fails to carry its burden.  It asserts that "additional violation[s] of those statutes, violations by others, or expanded violations of those same statutes would support further

7

investigation." Opp. at 4. But that assertion is entirely speculative. The Government offers no factual basis for the claim and relies instead on an *ex parte* submission that Mr. James cannot examine, test, or rebut.

Nor does the Government explain how routine title-company records from a residential real estate closing could plausibly implicate additional violations of the charged offenses or reveal new defendants. The records sought concern a single property sale by a trust associated with Mr. James—not a multi-party transaction involving potential co-conspirators or new criminal conduct. The absence of any factual explanation or supporting authority for the Government's supposed "ongoing investigation" strongly suggests pretext. Simply asserting that an investigation is ongoing does not establish a legitimate investigative purpose or rebut the substantial evidence that the dominant purpose of the Subpoena is trial preparation.

### D.     The Government Is Improperly Circumventing the Limitations on Trial Subpoenas

The Government's opposition likewise fails to address Mr. James's argument that the Subpoena is being used to circumvent the limitations governing trial subpoenas under Rule 17(c). A Rule 17(c) subpoena may be used only to obtain materials that are themselves relevant and admissible at trial. *See United States v. Nixon*, 418 U.S. 683, 699 (1974).

The Government's apparent strategy is to obtain sale-related records through the grand jury that it could not obtain through a Rule 17(c) subpoena—precisely because such records would have to satisfy the relevance and admissibility requirements imposed by *Nixon*. That tactic is impermissible. As the Second Circuit explained in *Simels*, courts must guard against efforts to "avoid the limitations on trial subpoenas by issuing pretextual grand jury process." 767 F.2d at 29–30. The same concern animated the court's reasoning in *Calk*, which warned that, "[w]ithout

effective safeguards, prosecutors could otherwise abuse the grand jury subpoena and skirt the limits imposed on discovery." 87 F.4th at 186.

## III.    The Court Should Require A Sworn Declaration and Inquire Regarding Other Subpoenas

When ordering a briefing schedule for this Motion, the Court instructed that "[t]he Government may submit materials relating to the subpoena for *in camera* review to the Court in connection with its response. ECF 33. In Response, the Government indicates that it has made an *ex parte* submission, but the Government does not indicate whether its submission includes a sworn declaration. ECF 37 at 1. Mr. James does not have insight into the information contained in the submission, but if the Court intends to rely on the Government's submission to deny Mr. James's motion to quash it should, as many other courts have done, require that the Government's assertions be made under oath. *See, e.g.*, *United States v. Chow*, No. 1:17-CR-00667 (GHW), ECF 43 (S.D.N.Y. Jan. 29, 2018) ("The Government is directed to submit, no later than February 2, 2018, affidavits attesting to the facts underlying the *ex parte* letters dated November 27, 2017 and December 29, 2017."); *see also Calk*, 87 F.4th at 187 ("[W]e need not decide whether the Government's representations, *even in a sworn affidavit*, can alone provide sufficient evidence that a subpoena was used for a legitimate purpose." (emphasis added)).

Separately, before crediting the Government's submission without subjecting it to adversary testing, the Court should require the Government to identify all grand jury subpoenas issued after the Indictment was returned, either by making an *ex parte* sealed submission or through *in camera* disclosure. *See United States v. Bergstein*, 302 F. Supp. 3d 580, 583 (S.D.N.Y. 2018) (ordering the government to make an *ex parte* sealed submission identifying all subpoenas duces tecum issued by the grand jury since a specified date and to update the information through the conclusion of trial). Without such disclosure, the Court cannot reasonably assess whether the

Government's representations regarding the broader scope of its ongoing grand jury investigation are credible.

## CONCLUSION

For the foregoing reasons and those previously presented to this Court, Mr. James respectfully requests that the Court quash the Subpoena to CTA and preclude the Government from using at trial any evidence obtained in response to the Subpoena and require the Government to identify all grand jury subpoenas issued after the Indictment was returned on January 27, 2026.

Dated: March 18, 2026          **QUINN   EMANUEL   URQUHART   &**
      New York, New York          **SULLIVAN, LLP**

                                                     Scott Hartman
                                                     William Burck
295 Fifth Avenue
New York, New York 10016
Telephone: (212) 849-7000
scotthartman@quinnemanuel.com
williamburck@quinnemanuel.com

**CERTIFICATE OF SERVICE**

I hereby certify that on March 18, 2026, I caused a copy of the foregoing document to be served via ECF on all counsel of record.

/s/ *Scott Hartman*
Scott Hartman