**quinn emanuel** trial lawyers | new york

295 5th Avenue, New York, New York 10016-7103 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7083**

WRITER'S EMAIL ADDRESS
**scotthartman@quinnemanuel.com**

April 10, 2026

<u>**VIA ECF**</u>

Hon. Analisa Torres
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Re:     <u>United States v. Patrick James and Edward James, 26-CR-00029-AT</u>

Dear Judge Torres:

We represent Defendant Patrick James in the above-referenced matter and respectfully write to request a conference at the Court's earliest convenience to discuss the current trial schedule, including the July 13, 2026, trial date, and the May 1, 2026, motions date.  As explained below, the volume of discovery produced to date—approximately *seven million* pages (and as yet incomplete)—the complexity of the allegations in the indictment, and the significant discovery and disclosure disputes that have already materialized and will require the Court's attention before trial, make it appropriate for the Court to revisit the current trial schedule.  Specifically, Mr. James requests a trial starting in the first quarter of 2027, and proposes a modification to the pre-trial motions deadlines.[1]

## I.     <u>Modification of Trial Schedule</u>

### A.     <u>Production Deficiencies</u>

To date, the Government has produced approximately seven million pages of discovery, totaling nearly *1.7 million documents*, in five productions consisting largely of materials obtained

---

[1]  Mr. James's lead counsel have previously scheduled criminal trials in September and November 2026.  Mr. James also understands that the co-defendant's counsel has a previously set trial in late January of 2027.

**quinn emanuel urquhart & sullivan, llp**
ABU DHABI | ATLANTA | AUSTIN | BEIJING | BERLIN | BOSTON | BRUSSELS | CHICAGO | DALLAS | DUBAI | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | RIYADH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | SINGAPORE | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | WILMINGTON | ZURICH

from *one hundred thirty-three* third parties.  The production includes a wide range of materials, including emails, internal communications, financial records, accounting data, transaction records, and other electronically stored information, spanning approximately 1990 to the present.  Because these materials originate from third parties, additional time and investigation will be required to understand their context, identify the relevant participants and transactions, and determine how they relate to the allegations in the indictment.  The materials also lack substantial metadata, making review more burdensome.

Critically, the Government confirmed during an April 8, 2026, meet-and-confer that its productions are not yet complete.  Although the Government has represented that it will achieve substantial completion by the end of the month, significant volumes of material will remain outstanding thereafter, and the Government has refused to provide any date certain by which those materials will be produced.  In addition, the Government has not committed to a schedule for producing *Brady* material, 3500 material, expert notices, co-conspirator statement disclosures, or Rule 404(b) notices.[2]

**Responsiveness Review.**  The Government acknowledged that it will not complete its responsiveness review of records obtained pursuant to search warrants prior to the April 27 substantial completion deadline.  It has further acknowledged that certain productions, including the responsiveness review of large ESI search warrant returns, have no committed completion date.

Of particular concern, the Government has been in possession of returns from a search warrant issued in March 2025 for First Brands Group email accounts at a time when Mr. James was the sole owner of the company.  The defense understands that no responsiveness review has been completed or produced and the Government has declined to provide a date by which it will the information the defense is entitled to.  The defense may have grounds to challenge the warrant but cannot assess whether to bring such a motion without first reviewing the responsive materials.

**Brady Disclosures.**  The Government also confirmed that *Brady* disclosures remain forthcoming, but declined to provide even an estimated timeframe for such disclosures.  Accordingly, the defense does not yet know when it will have received all discovery to which it is entitled, or what those additional productions will contain.

**Privilege-Related Materials.**  The Government has requested that the defense provide a privilege log related to hundreds of pages of materials obtained from a search warrant executed on Mr. James's phone by April 17.  The defense is undertaking that exercise expeditiously and will assess whether motion practice related to privilege issues arising from these materials is needed.  Of perhaps greater concern, however, the Government *has not* produced the results of its screening of Mr. James's personal emails, nor provided an estimate of when it will do so.  Once produced,

---

[2]    The Government has proposed to meet and confer at some later date regarding a pretrial disclosure schedule but declined to provide any sense of its proposed deadlines to Mr. James's counsel during the April 8, meet and confer, leaving the defense without a roadmap for when critical materials will be produced in advance of the July 13 trial date.

the defense will then need to analyze substantial volumes of material for privilege and determine whether additional motion practice is necessary.

Further, the documents received to date do not include substantial volumes of documents that the defense expects exist from counsel for First Brands Group during the period when Mr. James was the sole owner and CEO and was receiving legal advice from those counsel, nor do they include a privilege log that indicates such a review was undertaken (and the defense suspects it was not). *See United States v. Stein*, 488 F. Supp. 2d 350, 367 (S.D.N.Y. 2007) ("[T]he burden of establishing the existence of an attorney-client privilege, in all of its elements, rests with the party asserting it."). Mr. James anticipates needing to peruse additional discovery and engage in motion practice to obtain these materials. The defense does not know, however, what additional materials may yet be forthcoming from the Government or when to expect them.

Finally, the Government has declined to produce statements of attorneys that are necessary for the defense to assess whether to bring pretrial motions related to privilege issues, including motions relevant to potential advice-of-counsel defenses available to Mr. James. Absent those statements, the defense cannot make an informed determination regarding the motions it needs to bring.

**Facial Deficiencies:** Notwithstanding the large volume of materials produced to date, the review the defense has undertaken thus far is strongly indicative of "cherry picking." While the defense understands that the government issued a subpoena to First Brands Group, the government has declined to provide the search protocols agreed on (i.e., terms and custodians). It appears from an analysis of the cover letters produced that some agreement on scope was reached, and that First Brands Group was permitted to selectively produce to the Government certain materials, while omitting others that likely contain exculpatory or *Giglio* materials. While the defense continues its analysis, some deficiencies are already apparent. For example, the Indictment alleges accounting fraud, but, given the time span of the alleged conspiracy, there are very few documents from the Company's controller. Likewise, the Indictment alleges fraud related to invoices, but the Government does not appear to have collected (or has declined to produce) most of the invoices purportedly at issue. In the same vein, First Brands appears to have imaged the phones of at least one of the key cooperating witnesses, but rather than demand production of the complete phone image (which would likely contain impeachment material for that witness as well as communications with other witnesses) the Government appears to have requested only messages between the witness and the defendants in this case.

Given that the Government has declined to provide the defense with information necessary to determine what was left behind (and, accordingly, what exculpatory information the defense may need to seek for itself through Rule 17). This stonewalling will, at a minimum, result in significant delay in the defense's ability to prepare for trial.

The incomplete state of the Government's production directly impairs the defense's ability to make pretrial motions. During the April 8 meet-and-confer, defense counsel raised that it cannot challenge search warrants or prepare certain substantive pretrial motions required under Fed. R. Crim. P. 12(b)(3) without the discovery that informs those motions. The Government did not

dispute this point.  In light of this reality, the current pretrial motion schedule—with motions due May 1—is not feasible for the defense.

The nature of the allegations further compounds the burden.  The indictment alleges a complex scheme involving thousands of transactions, communications, and participants across multiple entities and lenders over many years.  Preparing an adequate defense requires not only reviewing the Government's production, but conducting independent investigation and consulting with Mr. James to place the materials in their proper context. Additional discovery through Rule 17 subpoenas is necessary given the number of persons and entities involved, and the apparent limitations of the Government's investigation which itself will generate further motion practice with both the Government and third parties.

B.      Pending Discovery Disputes and Anticipated Motion Practice

Beyond the sheer volume of material, the defense has identified significant deficiencies in the Government's production and disclosure obligations—deficiencies that will require substantial motion practice and the Court's intervention before trial can proceed.  On March 18, 2026, the defense sent the Government letters requesting (1) expedited production of categories of *Brady* and Rule 16 material (Ex. A), and (2) a bill of particulars identifying thirty-four categories of information necessary to prepare the defense (Ex. B).  The Government responded to both letters on April 3, 2026 (Exs. C, D), and the defense provided a follow-up letter earlier today (Ex. E). Substantial disputes remain unresolved and significant motion practice will be required, on, at a minimum, the topics below.[3]

***Brady* and Rule 16 Deficiencies**.   The Government declines to produce, or defers indefinitely, several categories of material that the defense contends are subject to immediate disclosure.   Among the items the Government is presently refusing to produce or has not committed to produce on any defined schedule are:

---

[3]   The Government has also failed to acknowledge the vast information asymmetry that exists in this case.  Mr. James has been indicted for actions he allegedly participated in while he was the CEO of First Brands Group, executed by the Company.  Yet, Mr. James cannot directly access a single document or communication from First Brands Group because he is no longer in control of the company.  Indeed, the Debtors have prevented Mr. James from accessing any First Brands Group documents, including documents that are Mr. James' personal property and he is contractually entitled to receive.   *See* Patrick James's Opposition to the United States' Motion to Intervene and Stay Discovery at ¶ 42, ECF No. 169, *First Brands Group, LLC v. James* (*In re First Brands Group, LLC*), Adv. Pro. No. 25-03803 (CML) (Bankr. S.D. Tex. Mar. 31, 2026) (explaining the Debtors will not even provide Mr. James with K-1 statements to pay his personal taxes).  Thus, unlike the majority of criminal defendants who can put their own documents at issue, Mr. James can only defend himself with what the government and Rule 17(c) provide.

- Materials in the possession of FBG's advisors (Weil, Gotshal & Manges and Alvarez & Marsal), which the Government contends are not within its possession, custody, or control notwithstanding FBG's extensive cooperation with the prosecution;[4]

- Communications regarding FBG's potential resolution of civil or criminal liability and its receipt of cooperation credit;

- FBG's document collection protocols, custodian lists, and search terms;

- Communications regarding FBG and third-party document producers' assertions or waivers of the attorney-client privilege;

- Underlying invoices reflected in financial records produced to date, to the extent such invoices are not in the Government's possession[5];

- Complete metadata fields for records produced in discovery;

- Responsive documents in the possession of other government parties, including the United States Attorney's Office for the Northern District of Ohio and the United States Secret Service, all of which have investigated Mr. James and undoubtedly provided documents to the prosecution team;

- Communications between the Government and putative victims and other recipients of grand jury subpoenas, trial subpoenas, or document requests, including but not limited to Jefferies Financial Group Inc. (including Leucadia Asset Management LLC and Point Bonita Capital Fund LLC), Katsumi, Onset Financial Inc., Evolution Credit Partners, Raistone, CarVal, Aequum, Factofrance, UBS, Bank of America, Wells Fargo, Truist, US Bank, UMB Bank, GLAS Trust Company LLC, PrimeRevenue, BDO, and any other entity the Government has identified or intends to identify as a victim in this case.

**Privilege.** Compounding the existing deficiencies is the issue of privilege. Mr. James, as the sole shareholder and CEO of First Brands Group during the time period of the alleged misconduct, has a right to access his communications with counsel, including but not limited to Michael Baker, Shekar Kumar, Ana-Maria Barbu, Nicholas Menasche, Andrew Curfman, Tess Peterson, Matt Liebson, Brian Troyer, Molly Vaughan, Simone Worthy, and Demetri Sintsirmas.

---

[4]   *See Stein*, 488 F. Supp. 2d at 360–64 (holding documents in the possession of a cooperating company subject to a Deferred Prosecution Agreement were within the Government's "control" for purposes of Rule 16); *see also United States v. Connolly*, 16-CR-0370 (CM), 2019 WL 2120523, at *2 (S.D.N.Y. May 2, 2019) (concluding company's cooperation with the government so significant it rendered the company "*de facto* the [g]overnment" for purposes of the defendant's constitutional rights)

[5]   To date, the Government's response has been insufficient for these key documents. The Government has only said it will produce them "[t]o the extent those records have been collected" without taking a position on whether the records themselves were collected. Mr. James cannot defend himself in a case based on the purported alteration of invoices without the underlying invoices; he must be told whether these will be produced by the Government or whether he will have to request them via Rule 17(c). Mr. James also finds it unlikely that the Government has made allegations about invoices without possessing them. *See* Indictment ¶¶ 8–9, 12, 16.

The Government's response acknowledges that defense counsel has specifically questioned whether Michael Baker, among others, was acting as counsel to Mr. James and whether FBG waived any such privilege without Mr. James's knowledge or consent. *See* Gov't *Brady* Response at 7. These issues involve multiple parties and the bankruptcy estate and have not been resolved. Additionally, the Government has not provided a privilege log or information regarding the process by which third parties withheld materials on the basis of privilege during the investigation. Accordingly, Mr. James reasonably anticipates motion practice on this issue will be necessary, in addition to other pretrial motion practice.

**Bill of Particulars**. The Government's April 3 response to the defense's bill of particulars letter declines to respond to twenty-one of the defense's thirty-four requests—including requests for identification of co-conspirators, a description of the alleged false or misleading statements, the specific transactions alleged to constitute wire fraud, and the identities of alleged victims—on the ground that the indictment provides adequate notice. The defense disagrees and intends to move for a bill of particulars as to the requests the Government has declined to answer. Briefing and resolving that motion will likewise require substantial additional time.

**Rule 17 Subpoenas**. Finally, the defense intends to seek leave to issue pretrial Rule 17(c) subpoenas directed to multiple third parties who possess admissible materials directly relevant to Mr. James's defense. Even on preliminary review, the Government's productions appear materially incomplete. As explained above, the productions do not appear to include the underlying invoices central to the Government's allegations of inflated or falsified accounts receivable, nor do they contain key documents from supply chain financing platforms such as VERCYFi LLC, LiquidX, PrimeRevenue, and Raistone, or bill-processing intermediaries such as NextProcess and ITS Traffic. Similarly, the productions contain few documents from key alleged-victim lenders, including Aequum, Evolution, UBS, UMB Bank, US Bank, and Wells Fargo, and do not include audit work papers or accounting software records from First Brands Group's principal auditor, BDO. The productions also lack the granular accounting records necessary to trace the transactions at issue, including accounts receivable and accounts payable subledgers, intercompany subledgers, aging schedules, borrowing base certificates, compliance certificates, and collateral audit reports.

The defense is still analyzing the productions to date, but even with only the deficiencies identified so far, the defense will almost certainly have to issue Rule 17(c) subpoenas to myriad third parties, including suppliers, lenders, financing platforms, and First Brands itself, seeking specific categories of records missing from the Government's production. Briefing on those subpoenas, and any resulting objections, will require additional time beyond what the current schedule permits.

C.    The Current Schedule Does Not Permit Adequate Preparation

In light of these circumstances, it is respectfully submitted that the current July 13, 2026, trial date does not afford the defense sufficient time to complete its review of the discovery, litigate the open disputes identified above, conduct the necessary investigation, and adequately prepare for trial. Courts in this District routinely recognize that substantial discovery productions and

complex factual allegations may warrant adjustments to the trial schedule to ensure that a defendant has a meaningful opportunity to prepare a defense. *See, e.g.*, *United States v. Reichberg*, No. 16-CR-468 (GHW), 2018 WL 6599465, at *3 (S.D.N.Y. Dec. 14, 2018) (noting that an eleven-month adjournment was necessary to "give [the defense] adequate opportunity . . . to prepare for trial" following the Government's "multi-terabyte" discovery production). Further, in light of the substantial deficiencies in production and anticipated discovery-related motion practice, the defense requests a bifurcated pretrial motions schedule, with a deadline for discovery motions six weeks from the Government's certification of substantial completion, with a separate deadline for the remaining pre-trial motions eight weeks after the court rules on the discovery motions.

We therefore respectfully request a conference with the Court to discuss an appropriate adjustment to the trial schedule in advance of the April 27 conference.[6]

Very truly yours,

Scott A. Hartman

cc:    Counsel of Record

---

[6] Counsel met and conferred with the Government on March 10, March 19, and April 8, 2026, regarding the trial date. During the March 10 call, the Government indicated it would oppose any adjournment request. During the March 19 call, the Government appeared to reverse course, and defense counsel understood from that discussion that the Government would not oppose an adjournment to January or February 2027. During the April 8 call, however, the Government stated that it was inclined to maintain the July 13 trial date and would oppose a January or February 2027 trial date, but might not oppose a fall 2026 trial date. Defense counsel advised the Government that a fall 2026 trial date is not feasible because key members of the defense team have pre-existing trial commitments in other matters in September and November 2026. The parties have not reached agreement on an adjournment.