quinn emanuel  trial lawyers | new york

295 5th Avenue, New York, New York 10016-7103 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7083**

WRITER'S EMAIL ADDRESS
**scotthartman@quinnemanuel.com**

April 17, 2026

**VIA ECF**

Hon. Analisa Torres
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Re:    United States v. Patrick James and Edward James, 26-CR-00029-AT

Dear Judge Torres:

We respectfully submit this reply in further support of Mr. James's request for a conference to discuss the trial schedule (ECF Doc. 43). The Government's opposition (ECF No. 45) mischaracterizes Mr. James's position in the bankruptcy proceeding, misstates the record regarding its own discovery in this case, and fails to rebut our showing that, given the delays and deficiencies in the Government's productions, the significant motion practice that remains outstanding, and the scheduling conflicts of Mr. James's lead counsel, forcing this case to trial on July 13 or in the Fall of 2026 will deny Mr. James his right to an effective defense by his chosen counsel.

I.    **The Government Mischaracterizes Mr. James's Position in the Bankruptcy Proceeding**

The Government opens its opposition by suggesting that Mr. James has sought an "indefinite postponement" of his criminal trial in order to exploit civil discovery in the bankruptcy proceeding. ECF No. 45 at 1. That characterization is misleading and ignores the full context of Mr. James's position as stated in his bankruptcy filing. *See* Patrick James's Opposition to the United States' Motion to Intervene and Stay Discovery at ¶ 34, ECF No. 169, *First Brands Group, LLC v. James (In re First Brands Group, LLC)*, Adv. Pro. No. 25-03803 (CML) (Bankr. S.D. Tex. Apr. 1, 2026). In arguing against the Government's request for a stay of the civil proceeding, Mr. James advised the bankruptcy court of his belief that the July 13 trial date is unlikely to hold given

**quinn emanuel urquhart & sullivan, llp**
ABU DHABI | ATLANTA | AUSTIN | BEIJING | BERLIN | BOSTON | BRUSSELS | CHICAGO | DALLAS | DUBAI | HAMBURG | HONG KONG | HOUSTON |
LONDON | LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | RIYADH | SALT LAKE CITY | SAN FRANCISCO |
SEATTLE | SHANGHAI | SILICON VALLEY | SINGAPORE | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | WILMINGTON | ZURICH

the state of discovery and particularly the ongoing production of voluminous materials and substantial discovery deficiencies that Mr. James has raised with the Government—a position the Government's own shifting posture on adjournment has confirmed.  Indeed, as Mr. James's bankruptcy filing noted, statistics maintained by the U.S. Government show that the median time between indictment and jury trial for a criminal proceeding in this District is 27.8 months.  *See id.*  The current trajectory of just seven months is therefore unusually compressed, particularly given the number of entities involved and the complexity of the financial issues raised by the Indictment. *See id.*  The Government's selective quotation of Mr. James's bankruptcy filing—omitting this context entirely—does not fairly represent his position.

The Government also misleadingly asserts that Mr. James "sought to depose cooperating Government witness Andrew Brumbergs."  ECF No. 45 at 3.  That is incorrect.  Mr. James did not independently notice Mr. Brumbergs's deposition.  Rather, First Brands Group noticed the deposition, and Mr. James served a cross-notice for the same date—a routine step to preserve his right to participate in a deposition noticed by another party.  More importantly, Mr. James's cross-notice was served on January 19, 2026, eight days before the Indictment was unsealed.  It therefore cannot plausibly be characterized as an attempt to circumvent the Federal Rules of Criminal Procedure.   To the contrary, in opposing the Government's motion to stay the adversary proceeding, Mr. James expressly invited the bankruptcy court to "deny depositions of potential government witnesses who may assert Fifth Amendment rights while the criminal case remains pending."[1]  Oppo. to Stay ¶ 71.

Finally, and most troublingly, the Government urges the Court to penalize Mr. James, and abridge his Sixth Amendment rights, simply because he has exercised his right against self-incrimination in the bankruptcy adversary proceeding.   In so doing, the Government mischaracterizes Mr. James's invocation of his Fifth Amendment rights, suggesting that his discovery requests in the adversary proceeding "do not appear to be for purposes of defending himself" because he has "refused to provide reciprocal discovery."  ECF Doc. 45 at 3.  That characterization is both legally and factually incorrect.  It is well established that the Fifth Amendment privilege may "be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory."  *Kastigar v. United States*, 406 U.S. 441, 444 (1972).  A defendant does not forfeit his right to participate in civil proceedings, including by seeking discovery necessary to defend himself against civil claims, simply because he exercises his constitutional right not to incriminate himself in a parallel criminal matter.  *See United States v. Certain Real Prop. & Premises Known as 4003-4005 5th Ave., Brooklyn, N.Y.*, 55 F.3d 78, 83–84 (2d Cir. 1995) (holding that "all parties—those who invoke the Fifth Amendment and those who oppose them—should be afforded every reasonable opportunity to litigate a civil case fully[,]" and that courts "should seek out those ways that further the goal of permitting as much testimony as possible to be presented in the civil litigation, despite the assertion of the privilege" (footnote and citation omitted)); *see also S.E.C. v. Softpoint, Inc.*, 958 F. Supp. 846, 866 (S.D.N.Y. 1997) ("Although [the defendant] is precluded from introducing evidence that he withheld from discovery, he is not barred from coming forward with arguments or witnesses to rebut the

---

[1]  In any event, earlier today Judge Lopez granted the Government's motion, staying "all discovery in [the Adversary Proceeding] pending the resolution of the parallel criminal case, *United States* v. *Patrick James & Edward James*, 26 Cr. 29 (AT) (S.D.N.Y.)."  Order, ECF No. 181, *First Brands Group, LLC v. James (In re First Brands Group, LLC)*, Adv. Pro. No. 25-03803 (CML) (Bankr. S.D. Tex. Apr. 17, 2026).

government's claims."). Mr. James's invocation of the privilege is, therefore, entirely consistent with his participation in both offensive and defensive discovery in the adversary proceeding.[2]

Indeed, the Government's framing inverts reality. It is the Government—not Mr. James—that is exploiting the relationship between the criminal and civil proceedings. By opposing an adjournment while simultaneously seeking to stay the adversary proceeding, the Government aims to deprive Mr. James of both an adequate opportunity to prepare for trial and a meaningful opportunity to defend himself in the civil action. The Government's stated goal, taken at face value, is to rush Mr. James to trial in a criminal proceeding where he has not had sufficient time to obtain and review discovery or litigate non-frivolous motions, and then to leverage that outcome to foreclose his ability to contest the underlying fraud allegations in any forum. It is the Government, in other words, that is seeking to exploit the criminal case to prejudice Mr. James in the civil proceedings—not the other way around.

## II.    The Government's Description of the Discovery at the Initial Conference Was Insufficient

The Government contends that the July 13 trial date was set after it "described the contours of Rule 16 discovery and an anticipated production timeline[,]" and that neither defendant objected. ECF No. 45 at 2. That argument ignores what the Government failed to disclose. The vague description provided at the February 4 conference omitted critical information, including document counts, the anticipated volume of discovery, and any meaningful indication of the complexity of the materials to follow.

Nor did the Government disclose the significant structural problems that have since emerged. These include its failure to complete a responsiveness review of search warrant returns obtained nearly a year ago, ongoing privilege screening obligations, and substantial gaps in metadata and third-party materials that have materially complicated review. Indeed, Government counsel informally acknowledged after the conference that the discovery and trial schedule were unrealistic.

Defendants also had no basis at the February 4 conference to know that the Government had departed from its ordinary subpoena enforcement practices with respect to First Brands Group. In the normal course, a subpoena recipient and the Government engage in a back-and-forth over the scope of the subpoena, search terms, and custodians, resulting in a production of all responsive materials. Here, however, the Government appears to have permitted First Brands Group—a cooperating entity with every incentive to curate its production to favor the Government and harm

---

[2] The Government appears to suggest that any discovery taken in the bankruptcy proceeding must be "to circumvent the federal criminal discovery rules." ECF No. 45 at 3. Mr. James rejects this inference and again emphasizes his right to defend himself in the adversary proceeding. To the extent Mr. James requested that certain documents produced to the Department of Justice are produced to him, he did so because those documents are relevant to his defense in the adversary proceeding and documents that were previously produced would not be burdensome to reproduce. Moreover, the basic premise put forth by the Government is directed at the wrong court; whether discovery in the adversary proceeding should be stayed is a question for the bankruptcy court and has no bearing on whether the current trial date gives Mr. James sufficient time to prepare.

Mr. James—to selectively produce documents in response to the subpoena, without the usual process that would have ensured completeness.  Defendants had no way of knowing at the time that this departure had occurred or that it would result in deficiencies directly affecting their ability to prepare motions and assess the evidence against them.

### III.    The Government's Shifting Positions on the Trial Date Reflect Strategic Maneuvering, Not Principle

The Government presents its opposition to any adjournment beyond October 2026 as a principled position grounded in the public interest.  The record, however, tells a different story.  As explained in Mr. James's initial letter motion (ECF No. 43), the Government's position on the trial date has shifted repeatedly.

During a March 10 meet-and-confer, the Government stated it would oppose any adjournment.  *See* ECF No. 43 at 7 n.6.  On March 19, it reversed course, indicating it did not oppose an adjournment and noting that "there's a big difference between the second half of 2027 and very early in the winter." Given that winter begins on December 21, defense counsel reasonably understood this to reflect openness to a January or February 2027 trial date. Yet on April 8, the Government shifted again, stating that it intended to maintain the July 13 date and would oppose a January or February 2027 trial.  These shifting positions undermine any claim that the Government's current stance is driven by principle. Instead, they suggest a strategic effort to force trial on a schedule that conflicts with defense counsel's availability, thereby impairing Mr. James's right to counsel of his choice.

### IV.    The Government Has Failed to Meet Its Discovery and Disclosure Obligations

The Government characterizes the defense's discovery complaints as "meritless" disputes about the scope of Rule 16.  ECF No. 45 at 1.  That framing obscures the nature and significance of the deficiencies at issue.

*The Government's Brady review should have been completed before indictment*. The Government indicted this case in January 2026 but now represents that it will not complete its Brady review of witness interview notes until April 27, 2026—more than three months later. It offers no explanation for this delay.  The same is true of its ongoing privilege screening and search warrant responsiveness reviews.  These are not routine pretrial tasks that arise in the ordinary course.  Instead, they are obligations the Government should have discharged—and could have discharged—before it indicted Mr. James.  Mr. James should not be forced to trial on an accelerated schedule to accommodate the Government's failure to prepare its own case.

*The Government has had the attorney list since December 2025*.  The Government suggests that privilege screening has been complicated by Mr. James's identification of approximately 110 individuals with whom he claims privileged communications.  But Mr. James provided an initial attorney list on December 2, 2025, and an updated list on December 7, 2025—more than four months ago. Any delay resulting from the Government's failure to act on that information cannot be attributed to Mr. James.

More fundamentally, the Government's attempt to fault Mr. James for the delay caused by the privilege review inverts the relevant legal principles. The attorney-client privilege exists to protect Mr. James, and he is entitled to insist that it be respected. Any delay is a consequence of the Government's investigative choices—not Mr. James's conduct. And the Government's suggestion that privilege assertions are suspect because some of the identified individuals are "not lawyers" ignores settled law. *See United States v. Kovel*, 296 F.2d 918, 921–22 (2d Cir. 1961) (holding that the attorney-client privilege may extend to communications with non-lawyer agents assisting counsel).

*The Northern District of Ohio search warrant materials should have been produced months ago*. The Government acknowledges that the U.S. Attorney's Office for the Northern District of Ohio obtained search warrants for First Brands Group email accounts in March 2025 but contends that SDNY did not receive the materials until mid-November 2025. That argument is unavailing. The Northern District of Ohio is plainly part of the prosecution team—this case was jointly announced, and an N.D. Ohio attorney serves as a Special Assistant United States Attorney in this matter. The Government's *Brady* and Rule 16 obligations extend to the prosecution team as a whole, not merely to materials physically in SDNY's possession. *See United States v. Gupta*, 848 F. Supp. 2d 491, 493 (S.D.N.Y. 2012) ("Where the USAO conducts a 'joint investigation' with another state or federal agency, courts in this Circuit have held that the prosecutor's duty extends to reviewing the materials in the possession of that other agency for *Brady* evidence."). There is no basis for the Government to disclaim responsibility for materials obtained by its own prosecution team nearly a year ago.

*The defense is entitled to move to suppress based on the conduct of the responsiveness review, not merely the warrant affidavit*. The Government suggests that production of the warrant affidavit affords the defense "ample time" to consider a suppression motion. ECF No. 45 at 5. That is incorrect. Suppression may be warranted based not only on deficiencies in the affidavit, but also on the manner in which the Government conducts its responsiveness review. *See United States v. Wey*, 256 F. Supp. 3d 355, 404–10 (S.D.N.Y. 2017) (suppressing evidence where the Government's post-search responsiveness review—conducted using an expanding list of search terms and novel charging theories not submitted to the issuing magistrate—reflected "grossly negligent or reckless disregard of the strictures of the Fourth Amendment"). Those arguments depend on the defense's ability to examine the documents the Government identifies as responsive and the process by which it made those responsiveness determinations, neither of which is available from the warrant affidavit alone. The Government's production of the affidavit therefore does not afford the defense a meaningful opportunity to assess its suppression arguments, let alone prepare a motion by May 1.

*The Government's Rule 16 obligations extend to materials it definitively possesses*. The Government attempts to characterize certain requests as seeking materials it does not possess. But several categories—such as communications with First Brands Group regarding search terms, custodians, review protocols, and privilege determinations—are plainly within the Government's possession. Because these materials bear on Mr. James's claim that First Brands Group was part of the prosecution team, and thus that the Government has a *Brady* obligation over materials in the company's possession, the Government has a duty to disclose them under *Brady* and Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure. *See Martinez v. United States*, 793 F.3d

533, 555 (6th Cir. 2015) ("[S]cope of the government's *Brady* obligations extends to evidence material to . . . the ability of a defendant to assert his constitutional rights."), *vacated on other grounds upon reh'g en banc*, 828 F.3d 451 (6th Cir. 2016); *United States v. Soto-Zuniga*, 837 F.3d 992, 1001–02 (9th Cir. 2016) (defendant entitled to discovery from government under Rule 16 to support claim of constitutional violations); see also Justice Manual 9-5.001 ("[P]rosecutor must disclose information that . . . might have a significant bearing on the admissibility of prosecution evidence."); *United States v. Gamez-Orduno*, 235 F.3d 453, 461 (9th Cir. 2000) (finding *Brady* violation where prosecution failed to disclose information that would have supported defendants' Fourth Amendment standing to challenge search).

Finally, the Government's representation that "substantially more than a 'good portion'" of Rule 16 discovery will be produced by April 27 does not resolve the issue. ECF No. 45 at 4. The current motions deadline is May 1—just four days later. The Government cannot produce vast quantities of data on April 27 and expect the defense to review that material and file motions by May 1, particularly when additional materials will remain outstanding.

## V.  Defense Counsel's Trial Conflicts Preclude a Fall 2026 Trial

The Government addresses defense scheduling conflicts only in passing, noting in a footnote that co-defendant Edward James's counsel has a January 2027 trial. It ignores the conflicts of Patrick James's own counsel, despite having been informed of them on April 8. Mr. James's lead counsel have previously scheduled criminal trials in September and November 2026.[3] The Government's decision to oppose any adjournment beyond October 2026 despite knowing these conflicts exist reflects a strategic decision, not a principled commitment to the public interest.

## VI.  An Adjournment Is Consistent with the Pretrial Periods Afforded Defendants in Comparable Cases

Finally, the Government invokes the public interest in a speedy trial and potential hardship to victims in support of its opposition to Mr. James's request. Those considerations, while legitimate, do not override Mr. James's right to prepare an adequate defense. Courts in this Circuit and elsewhere routinely recognize that the complexity of a case—measured by the volume of discovery, the number of transactions at issue, and the sophistication of the alleged scheme—is a paramount consideration in setting a trial schedule. *See United States v. Reichberg*, 2018 WL 6599465, at *3 (S.D.N.Y. Dec. 14, 2018) (noting that an eleven-month adjournment was necessary to "give [the defense] adequate opportunity . . . to prepare for trial" following the Government's "multi-terabyte" discovery production); *id.* at *13 (collecting cases in the Second Circuit and concluding that a 28-month period between indictment and trial was in line with other complex cases in the circuit); *see also United States v. Skilling*, No. H-04-25 (S.D. Tex. 2004) (nineteen months in between indictment and trial for former CEO of Enron); *United States v. Ho Wan Kwok*, No. 1:23-CR-118 (AT) (S.D.N.Y. 2023) (fifteen months between indictment and trial); *United*

---

[3]  Mr. Burck represents Jeyakumar Nadarajah in *United States v. Nadarajah*, 23-CR-891 (CCC) (D.N.J.), which is scheduled to go to trial on November 3, 2026. Mr. Hartman represents defendant Gökçe Güven in *United States v. Güven*, 25-CR-592 (LAK) (S.D.N.Y.), which has a trial date of September 14, 2026.

*States v. Trevor Milton*, No. 21-CR-478 (ER) (S.D.N.Y. 2021) (fourteen months between indictment and trial); *United States v. Rigas*, 258 F. Supp. 2d 299, 303 (S.D.N.Y. 2003) (fourteen months between completion of Rule 16 discovery and trial date).

Here, the Government has produced **seven million pages** from roughly **1.7 million documents**.[4] An adjournment to early 2027 is well within the range of pretrial periods afforded in comparable complex financial fraud cases. The Government's principal response—that the defense is "well resourced" and can rely on "AI-assisted processes" (ECF No. 45 at 3)—is unpersuasive. The defendants in the cases cited above were likewise well resourced and represented by sophisticated counsel, yet courts still granted adjournments in light of the complexity and volume of discovery. Additionally, there is no legal basis to require a criminal defendant to rely on AI tools to ensure adequate trial preparation.

Moreover, significant discovery disputes remain that will require motion practice and Court intervention. The parties fundamentally disagree on the scope of the Government's Rule 16 and *Brady* obligations, including whether those obligations extend to First Brands Group in light of its extensive involvement in the investigation. *See United States v. Stein*, 488 F. Supp. 2d 350, 360–64 (S.D.N.Y. 2007) (holding documents in the possession of a cooperating company subject to a Deferred Prosecution Agreement were within the Government's "control" for purposes of Rule 16). In addition, Mr. James intends to issue Rule 17(c) subpoenas to third parties, which will likely generate objections and require briefing on a schedule the current pretrial calendar cannot accommodate.

## VII.    Conclusion

The Government's opposition rests on a flawed premise: that the complexity of this case, the volume of outstanding discovery, the deficiencies in the Government's own productions, the scheduling conflicts of Mr. James's chosen counsel, and the pendency of parallel proceedings can all be waved away by invoking the public interest in a speedy trial. They cannot. The defendants in countless comparable cases were likewise charged with serious offenses affecting many victims—and courts nonetheless afforded their counsel the time necessary to mount an adequate defense. The public interest is not served by a proceeding that denies Mr. James his Sixth Amendment rights, risks an incomplete or distorted presentation of a complex factual record, and undermines the legitimacy of any outcome. For the foregoing reasons, Mr. James respectfully requests a conference with the Court to discuss an appropriate adjustment to the trial and motions schedule.

---

[4] The Government acknowledges that its production is not yet complete and has declined to commit to a date certain by which it will be finished. Notably, on April 15, 2026, the Government requested an additional two-terabyte hard drive for a further production, confirming that substantial material remains outstanding.

Very truly yours,

Scott Hartman

cc:    Counsel of Record