UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

PATRICK JAMES and
EDWARD JAMES,

Defendants.

Crim. Action No.: 26-CR-29 (AT)

**REPLY IN SUPPORT OF DEFENDANT PATRICK JAMES'S**
**MOTION FOR A BILL OF PARTICULARS**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..... 1

ARGUMENT ..... 2

I. THE GOVERNMENT MUST IDENTIFY THE ALLEGED CO-CONSPIRATORS AND ENTERPRISE MEMBERS ..... 2

A. The *Nachamie* Framework Governs ..... 3

B. The *Nachamie* Factors Weigh in Favor of Disclosure ..... 3

C. Section 225 Independently Requires Co-Conspirator Identification ..... 6

II. THE GOVERNMENT MUST IDENTIFY THE ALLEGEDLY AFFECTED OR DEFRAUDED FINANCIAL INSTITUTIONS AND THE OTHER ALLEGED VICTIMS ..... 7

A. The Government's "And Others" Reservation Defeats *Orena* ..... 8

B. The Government's *Wang* Argument Misreads What *Wang* Granted ..... 8

C. The Government's Attempts to Distinguish *Tournant* and *Davidoff* Fail ..... 9

III. THE GOVERNMENT MUST IDENTIFY THE ALLEGEDLY FALSE STATEMENTS AND FRAUDULENT INVOICES ..... 10

A. The "Mechanical Comparison" Argument Shifts the Burden of Proof ..... 10

B. The Government's Scheme-by-Scheme Walkthrough Proves Particularization is Feasible ..... 11

C. *Connolly* and *Hanratty* Control ..... 11

D. *Wang*'s Transaction-Identification Holding Directly Supports the Request ..... 12

E. The Government's Contrary Authority is Misapplied ..... 12

F. Confinement is the Point of a Bill of Particulars ..... 13

CONCLUSION ..... 13

# TABLE OF AUTHORITIES

**Page**

## Cases

*In re First Brands Group, LLC*,
No. 25-90399 (Bankr. S.D. Tex.)....................5

*United States v. Akhavan*,
No. 20 Cr. 188 (JSR), 2020 WL 2555333 (S.D.N.Y. May 20, 2020) ....................6

*United States v. Bin Laden*,
92 F. Supp. 2d 225 (S.D.N.Y. 2000)....................3, 5

*United States v. Bortnovsky*,
820 F.2d 572 (2d Cir. 1987)....................2, 5, 6, 11

*United States v. Chen*,
378 F.3d 151 (2d Cir. 2004)....................7

*United States v. Chu*,
No. 25 Cr. 579 (PKC), 2026 WL 2364076 (S.D.N.Y. Aug. 14, 2026)....................5, 6, 7

*United States v. Connolly*,
No. 16 Cr. 370 (CM), 2017 WL 2537808 (S.D.N.Y. May 24, 2017)....................11, 12

*United States v. Davidoff*,
845 F.2d 1151 (2d Cir. 1988)....................8, 10, 13

*United States v. Feola*,
651 F. Supp. 1068 (S.D.N.Y. 1987)....................13

*United States v. Hanratty*,
No. 24 Cr. 153 (LGS), 2024 WL 4892742 (S.D.N.Y. Nov. 26, 2024)....................12

*United States v. Ho*,
No. 25 Cr. 3 (JAV), 2026 WL 1535022 (S.D.N.Y. June 1, 2026)....................8, 13

*United States v. Ikoli*,
No. 16 Cr. 148 (AJN), 2017 WL 396681 (S.D.N.Y. Jan. 26, 2017)....................12, 13

*United States v. Ingarfield*,
No. 20 Cr. 146 (RA), 2022 WL 16700068 (S.D.N.Y. Nov. 3, 2022)....................3

*United States v. Kahale*,
789 F. Supp. 2d 359 (E.D.N.Y. 2009) ....................3, 6, 12, 13

*United States v. Lino*,
No. 00 Cr. 632 (WHP), 2001 WL 8356 (S.D.N.Y. Jan. 2, 2001) ....................4

*United States v. Mandell*,
710 F. Supp. 2d 368 (S.D.N.Y. 2010)....................13

*United States v. Middendorf*,
No. 18 Cr. 36 (JPO), 2018 WL 3956494 (S.D.N.Y. Aug. 17, 2018)....................5, 6

*United States v. Nachamie*,
91 F. Supp. 2d 565 (S.D.N.Y. 2000)....................3, 4, 6

*United States v. Orena*,
32 F.3d 704 (2d Cir. 1994)....................1, 8

*United States v. Rajaratnam*,
No. 09 Cr. 1184 (RJH), 2010 WL 2788168 (S.D.N.Y. July 13, 2010) ....................13

*United States v. Tournant*,
No. 22 Cr. 276 (LTS), 2023 WL 8649893 (S.D.N.Y. Dec. 13, 2023)....................1, 9, 10

*United States v. Walsh*,
194 F.3d 37 (2d Cir. 1999)....................7

*United States v. Wang*,
No. 23 Cr. 118 (AT), 2024 WL 1251105 (S.D.N.Y. Mar. 22, 2024) ....................1, 3, 8, 9, 10, 12

**Statutes**

18 U.S.C. § 20....................7

18 U.S.C. § 225(a)(1)....................2, 6

**Other Authorities**

Fed. R. Crim. Proc. 7(f) ....................1, 3, 7, 8, 11, 13

Patrick James submits this reply in further support of his motion (ECF No. 85) under Federal Rule of Criminal Procedure 7(f) for an order directing the Government to provide a bill of particulars.

## PRELIMINARY STATEMENT

The Government's 44-page opposition (ECF No. 103) confirms, rather than refutes, the need for a bill of particulars.

First, as to the identity of co-conspirators and enterprise members, the Government does not dispute that it has declined to identify a single unindicted co-conspirator by name. Instead, it argues that vague references to an "inner circle" and the identification of two individuals in a separate proceeding provide adequate notice. They do not, which is why Mr. James has sought relief from this Court. The *Nachamie* factors—which the Government dismisses but courts in this District routinely apply—each favor disclosure, and the Government's footnote treatment of the § 225 four-person element fails to grapple with what the statute actually requires: proof that the offense was committed by four or more persons acting in concert.

Second, as to the identity of victims and financial institutions, the Government has identified only eleven institutions out of more than one hundred in discovery, while expressly reserving the right to prove additional victims at *trial*. That open-ended reservation is not the "adequate notice" the Second Circuit approved in *United States v. Orena*, 32 F.3d 704, 714 (2d Cir. 1994), where the government represented that the additional victims were not then known. And the Government's attempt to distinguish *Wang* and *Tournant* by characterizing the alleged misrepresentations as "common" rather than "individualized" ignores that the four charged schemes each targeted different categories of counterparties through different mechanisms—placing this case far closer to *Tournant* than to *Wang*.

Third, on false statements and fraudulent invoices, the Government asks Mr. James to conduct a "mechanical comparison" of millions of records to determine which transactions it contends are criminal—the very burden-shifting the Second Circuit condemned in *United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir. 1987). Even then, the Government does not represent that this exercise will yield the full universe of misrepresentations that it will attempt to prove at trial. The Government's own opposition proves that particularization is feasible: its scheme-by-scheme walkthrough identifies specific financers, payment processors, and bank accounts with a specificity it previously refused to provide. The only question is whether the Court will require the Government to provide the defense with sufficient notice to adequately prepare for trial.

Throughout its opposition, the Government asks Mr. James to assemble his defense from eight sources outside the Indictment: discovery cover letters, disclosure letters, search-warrant affidavits, witness-interview summaries, forthcoming expert reports, forthcoming trial exhibits, forthcoming Jencks material, and—remarkably—filings from a bankruptcy proceeding in another district. And, again, the Government does so without ever committing that this exercise will yield the universe of false statements the Government will proceed on at trial. This patchwork does not justify refusing a bill of particulars. It shows why the Court should order one.

For these reasons and those in Mr. James's opening brief, the Court should order the Government to provide a bill of particulars.

## ARGUMENT

### I. THE GOVERNMENT MUST IDENTIFY THE ALLEGED CO-CONSPIRATORS AND ENTERPRISE MEMBERS

Counts One, Two, and Nine each require the Government to prove that Mr. James acted with unidentified other persons, and Count One further requires proof of an enterprise involving at least four persons acting in concert. 18 U.S.C. § 225(a)(1); Indictment ¶¶ 39–41, 55–56. The

Indictment names two. The Government's opposition offers several reasons why Mr. James is not entitled to know the others. None withstands scrutiny.

**A. The *Nachamie* Framework Governs**

The Government suggests that "courts have not hewed to the six-factor analysis" in *United States v. Nachamie*, 91 F. Supp. 2d 565 (S.D.N.Y. 2000). Opp'n at 16. The authority in this Circuit says otherwise. This Court applied a functionally identical multi-factor framework to bill-of-particulars requests in *United States v. Wang*, No. 23 Cr. 118 (AT), 2024 WL 1251105, at *3 (S.D.N.Y. Mar. 22, 2024). And courts in this District routinely apply *Nachamie* to requests for co-conspirator identities in particular. *See, e.g.*, *United States v. Kahale*, 789 F. Supp. 2d 359, 372 (E.D.N.Y. 2009) ("courts in this Circuit have routinely evaluated [the] six factors" identified in *Nachamie*); *United States v. Ingarfield*, No. 20 Cr. 146 (RA), 2022 WL 16700068, at *3 (S.D.N.Y. Nov. 3, 2022); *United States v. Bin Laden*, 92 F. Supp. 2d 225, 241 (S.D.N.Y. 2000).

**B. The *Nachamie* Factors Weigh in Favor of Disclosure**

The Government argues that three of the six *Nachamie* factors weigh against disclosure and dismisses Mr. James's § 225 argument in a footnote. Opp'n at 16–17 & n.1. As the opening brief demonstrates, each factor favors disclosure, and the Government's contrary arguments do not withstand scrutiny.

*Factor 1.* The Government argues that Factor 1—the number of co-conspirators—cuts against disclosure because the Indictment already identifies Patrick and Edward James, Graham (CFO), and Brumbergs (SVP), and because Mr. James "well know[s]" that the "'inner circle' of leadership consisted of a circumscribed group occupying operations and finance roles atop First Brands's 26,000 employees." Opp'n at 16–17. Neither point answers a Rule 7(f) motion. The four named individuals are the Indictment's two defendants and two individuals charged in a separate proceeding; the Indictment does not identify a single unindicted co-conspirator by name.

And the "inner circle" framing merely relabels the problem. The Indictment does not identify the "inner circle" members, and neither does the Government's April 28, 2026, Brady letter, which identifies current and former First Brands employees the Government has interviewed and summarizes some, but not all, of what those individuals said. If that "inner circle" is as circumscribed as the Government contends, there is no reason not to identify its members. If it is not—and the Indictment's breadth suggests it is not—then the label provides no particularity at all.

Scores of employees held operations and finance roles at First Brands and its affiliates during the seven years covered by the Indictment. The "inner circle" label (Indictment ¶ 13) and the Government's shorthand for the alleged enterprise—Mr. James, his co-defendant, and "their subordinates" (Opp'n at 3)—leave Mr. James to guess which of thousands of employees the Government considers a co-conspirator. Courts in this Circuit require particulars even for far clearer indictments. *See United States v. Lino*, No. 00 Cr. 632 (WHP), 2001 WL 8356, at *13–14 (S.D.N.Y. Jan. 2, 2001) (ordering disclosure of co-conspirators in a wide-ranging, multi-scheme conspiracy because "a defendant is more likely to be surprised by the identity of other co-conspirators, whom he may never have met" (quoting *Nachamie*, 91 F. Supp. 2d at 572–73)).

*Factors 5 and 6.* The Government contends that the defense "collapses" the danger and investigation-harm factors and focuses only on "physical harm." Opp'n at 18. But that misreads the opening brief, which addresses each factor separately. ECF No. 85 at 11–12. Neither favors nondisclosure: nothing in the record suggests a risk to any witness, and the Government's interest in protecting its investigation has eroded. *Id.* Two charged co-conspirators—Graham and Brumbergs—have pleaded guilty in a public proceeding before this Court. *See United States v. Peter Andrew Brumbergs and Stephen Graham*, 26 Cr. 25 (AT) (S.D.N.Y.). The underlying facts

have also been publicly litigated in the First Brands Chapter 11 proceeding since September 2025, *see In re First Brands Group, LLC*, No. 25-90399 (Bankr. S.D. Tex.). The Government's principal support for its Factor 6 argument is the Court's prior order denying Mr. James's motion to quash a third-party grand jury subpoena (ECF No. 56), which observed that the "investigation into potential charges and potential co-conspirators is ongoing." ECF No. 56 at 5; Opp'n at 18. But that order addressed the propriety of a grand jury subpoena to a non-party, not the standard governing a bill of particulars, and cannot outweigh Mr. James's need for notice.

*Discovery volume.* The Government also relies on its discovery volume to address Factor 4. *See* Opp'n at 18. It characterizes 16.9 million pages, 4.5 million documents, and productions from more than 130 third parties as "unremarkable in volume and scope for a significant corporate fraud." *Id.* That characterization gets *Bortnovsky* backwards. The problem is not the number of documents; it is the Government's refusal to identify which documents matter. That refusal shifts the burden of proof to the defense. *See Bortnovsky*, 820 F.2d at 574–75 ("The Government did not fulfill its obligation merely by providing mountains of documents to defense counsel . . . ."); *Bin Laden*, 92 F. Supp. 2d at 234 ("the large volume of material disclosed is precisely what necessitates a bill of particulars"). The Government's own authorities prove the point. *United States v. Chu* involved a single defendant and a single company. *See* No. 25 Cr. 579 (PKC), 2026 WL 2364076, at *5 (S.D.N.Y. Aug. 14, 2026). *United States v. Middendorf* involved six co-conspirators at two entities. *See* No. 18 Cr. 36 (JPO), 2018 WL 3956494, at *2 (S.D.N.Y. Aug. 17, 2018). *Wander* involved a single, disclosed co-conspirator. *See* Opp'n at 13 (discussing *United States v. Wander*, No. 25 Cr. 473 (JPO), ECF No. 63 (Tr. of July 31, 2026)). None approached this case's scale: a seven-year conspiracy involving four fraud mechanisms, multiple categories of counterparties, and hundreds of potential victims. The Government nevertheless tells Mr. James

to find his own co-conspirators by conducting "targeted and comprehensive searches" through 4.5 million documents. Opp'n at 18. That is the burden-shifting maneuver *Bortnovsky* forbids.

*Factors 2 and 3.* The remaining factors—the conspiracy's duration and breadth, and whether the Government has otherwise provided adequate notice—also favor disclosure. Courts grant co-conspirator identification in cases involving "a large number of co-conspirators over a long period of time." *Middendorf*, 2018 WL 3956494, at *2 (first citing *Kahale*, 789 F. Supp. 2d at 372; and then *Nachamie*, 91 F. Supp. 2d at 573). Here, the alleged conspiracy spans seven years and encompasses four distinct fraud mechanisms directed at different categories of counterparties. Nor has the Government provided notice of co-conspirator identities through other channels: the Indictment names none; the disclosure letters identify some interviewees but do not specify which are alleged co-conspirators; and the Government has expressly declined to make that identification. *See United States v. Akhavan*, No. 20 Cr. 188 (JSR), 2020 WL 2555333, at *2 (S.D.N.Y. May 20, 2020) (ordering co-conspirator identification in a three-year conspiracy, noting that the "volume of discovery produced to the defendants is so large that, combined with the complexity of the alleged scheme, it may nonetheless be practically impossible for the defendants to ascertain whom the Government considers a co-conspirator").

### C. Section 225 Independently Requires Co-Conspirator Identification

The Government's response to the § 225 four-person requirement—buried in a footnote—rests on three arguments, each of which fails. Opp'n at 17 n.1. First, the Government contends that Mr. James has not explained why § 225 should entitle him to particulars when any conspiracy "requires . . . at least two people." *Id.* That confuses the ordinary conspiracy statutes with § 225's distinct statutory element. Count One does not charge an ordinary conspiracy; it charges a "continuing financial crimes enterprise" defined by statute as four or more persons acting in concert, 18 U.S.C. § 225(a)(1), and the identity of those statutorily-required participants is a

"specific act[] of which he is accused" that Rule 7(f) requires the Government to disclose. *United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004) (quoting *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999)). Second, the Government's assertion that § 225's mandatory minimum is "legally irrelevant" mischaracterizes the argument; Mr. James does not seek particulars as a consequence of the mandatory minimum but because the four-person element is an element the Government must prove. Third, the Government's claim that *Chu* "rejected a nearly identical" § 225 argument is inaccurate. In *Chu*, all three co-conspirators had already been identified by name. 2026 WL 2364076, at *5. Here, the Government has identified only one alleged co-conspirator: Edward James. That leaves the Government at least two persons short of the four § 225 requires. If the Government contends that Graham and Brumbergs are those persons, it should say so. If others are involved, it must identify them.

## II. THE GOVERNMENT MUST IDENTIFY THE ALLEGEDLY AFFECTED OR DEFRAUDED FINANCIAL INSTITUTIONS AND THE OTHER ALLEGED VICTIMS

Counts One through Eight require the Government to prove that the conduct underlying each scheme "affected" or "defrauded" a "financial institution." 18 U.S.C. § 20. The Government has identified only eleven such institutions in response to Mr. James's request—out of more than one hundred lenders, factors, financers, and creditors identified in discovery—while expressly reserving the right to prove additional victims at trial. ECF No. 43-4 at 1 n.1. The Government's opposition characterizes Mr. James's request as an impermissible demand for a "witness list." Opp'n at 19. It is not. Mr. James has asked the Government to identify the known victims of the alleged schemes—the entities against whom the elements of wire fraud and bank fraud must be established—not the trial witnesses the Government intends to call. *Davidoff* and its progeny require the former.

**A. The Government's "And Others" Reservation Defeats *Orena***

The Government reads *Orena* to hold that a list of victims plus "the phrase 'and others'" satisfies Rule 7(f). Opp'n at 20–21 (quoting *Orena*, 32 F.3d at 714). But *Orena* approved the "and others" trailer only because the Government represented that the additional victims were not then "known to the government." 32 F.3d at 714. The Government's April 3, 2026, letter does the opposite. It reserves not against genuinely unknown victims but against victims the Government may prove at trial—an open-ended reservation about the Government's own proof, not a good-faith placeholder for unknown parties. That reservation is precisely what makes a bill of particulars necessary. *See United States v. Ho*, No. 25 Cr. 3 (JAV), 2026 WL 1535022, at *6 (S.D.N.Y. June 1, 2026) (granting bill of particulars where the Government had identified specific items through discovery but "repeatedly caveat[ed] that it reserves the right to continue to supplement or amend its list").

**B. The Government's *Wang* Argument Misreads What *Wang* Granted**

The Government emphasizes that in *Wang*, this Court denied particulars as to the 5,500 investors. Opp'n at 21. That is true but irrelevant to this request. The Court granted particulars as to the specific accounts and entities at issue because the indictment identified 44 entities within a "complex web" of over 500 accounts and 80 entities. *Wang*, 2024 WL 1251105, at *4–5. Like the request the Court granted in *Wang*, Mr. James's request seeks the specific financial institutions—analogous to the accounts and entities in *Wang*—that the Government contends were "affected" or "defrauded," not every downstream investor. The disparity is greater here: the Government has identified eleven institutions out of more than one hundred in discovery, compared with 44 of 80-plus in *Wang*.

### C. The Government's Attempts to Distinguish *Tournant* and *Davidoff* Fail

The Government argues that this case involves "common" rather than "individualized" misrepresentations and that the "entities and victims affected by each scheme are limited" compared to the investor bases in *Wang* and *United States v. Tournant*, No. 22 Cr. 276 (LTS), 2023 WL 8649893 (S.D.N.Y. Dec. 13, 2023). Opp'n at 21–22. Neither argument survives comparison with the record. In *Wang*, this Court distinguished between "highly individualized" fraud of the type at issue in *Tournant*—where different misrepresentations were made to different investors in different funds—and the mass, undifferentiated solicitations at issue there. *See Wang*, 2024 WL 1251105, at *3–4. This case falls on the *Tournant* side of that line.

Each of the four charged schemes targeted a different category of counterparties through different mechanisms: accounts-receivable factors received fake invoices; supply-chain financers received fabricated payable data; Off-Sheet Lenders received false collateral representations; and asset-backed lenders received false financial statements. Each category of victim had different contractual relationships, due-diligence processes, and exposure. Most importantly—and as discussed further below—the particular misrepresentations alleged are highly individualized: representations to financing counterparties about the nature and quality of perhaps millions of items of collateral underlying thousands of individual financing transactions.

These factors distinguish this case from *Wang*. *Wang* involved mass social-media solicitations in which "nearly all of the investors" received the same undifferentiated pitch. *Id*. at *4. *Tournant*, by contrast, held that forcing the defendant to "extrapolate" the full set of victims from illustrative examples would be "a daunting and potentially impossible undertaking" because the investors were differently situated. 2023 WL 8649893, at *4. This case presents the same problem. The Government's assertion that the victim universe is "limited" is unsupported. The Indictment's sweeping references to "lenders and financing partners," "factoring partners,"

"inventory financers," and "creditors, auditors, and potential purchasers" (Indictment ¶¶ 2, 12, 22, 34), together with the more than one hundred financing counterparties identified in discovery, suggest a victim universe at least comparable to *Tournant*'s hundred-plus institutional investors.

Nor can the Government confine *Davidoff* to its facts. The Second Circuit announced a rule of general application: the Government may not "automatically rel[y]" on discovery "as an adequate substitute for a straightforward identification in a bill of particulars of the identity of victims of offenses that the prosecution intends to prove." *United States v. Davidoff*, 845 F.2d 1151, 1155 (2d Cir. 1988). Here, the Government reserves the right to prove victims at trial that it is aware of but has not identified in its disclosures. That is what *Davidoff* forbids.

## III. THE GOVERNMENT MUST IDENTIFY THE ALLEGEDLY FALSE STATEMENTS AND FRAUDULENT INVOICES

The Government does not seriously dispute that neither the Indictment nor its subsequent letters identify with any particularity which of the tens of thousands of invoices, financial statements, borrowing base certificates, and other representations at issue over a seven-year period are alleged to be fraudulent. *See* Opp'n at 12–13. The Government instead offers a series of distinctions and analogies that do not withstand scrutiny. The problem is compounded by the Indictment's repeated attribution of the alleged fraud not to any identified person but to "First Brands" as an entity (Indictment ¶¶ 14, 16–17, 31), to unnamed "employees" (*id.* ¶¶ 12–13, 17, 19, 31), or to an undefined "inner circle" (*id.* ¶¶ 13, 34)—leaving Mr. James unable to determine which individuals allegedly made which statements across a company of 26,000 employees.

### A. The "Mechanical Comparison" Argument Shifts the Burden of Proof

The Government's principal response is that the defense can conduct a "mechanical comparison" of First Brands's internal Vizion data against factor-produced records. Opp'n at 26, 30–31. That proposal repeats the burden-shifting maneuver the Second Circuit rejected in

*Bortnovsky*. In *Bortnovsky*, the defense could have compared submitted claims against underlying records. But the Second Circuit held that requiring the defendant to do so "impermissibly . . . shifted" the burden of proof onto him. 820 F.2d at 574–75. Here, the Government would require Mr. James to build his own database, reconcile millions of records, and identify the invoices it contends are fraudulent. That is *Bortnovsky* squared.

The proposal is also infeasible. As Edward James explained in his motion for a bill of particulars, the Vizion data the Government cites contain information regarding 6,452,235 invoices issued between 2023 and 2025. ECF No. 91 at 15. But Count Three alleges a scheme extending from 2020 to 2025. The Government has not directed Mr. James to any invoice data before 2023. That leaves a two-year gap in the very universe of data the Government says holds the answer. A "mechanical comparison" that cannot cover the alleged conduct cannot substitute for particulars.

**B. The Government's Scheme-by-Scheme Walkthrough Proves Particularization is Feasible**

Pages 25 through 29 of the opposition identify each fraud scheme with substantial specificity: identifying "just four" supply-chain financers, three payment processors (Next Process, ITS Traffic Systems, and VercyFi), and six bank accounts. Opp'n at 27 & 34 n.5. The Government identifies these particulars in its opposition; it can provide them in a bill of particulars that binds its proof at trial. Its willingness to particularize when pressed—but refusal to bind itself to those particulars—shows why Rule 7(f) exists.

**C. *Connolly* and *Hanratty* Control**

The Government emphasizes that *United States v. Connolly* rested on "bespoke factors," including trade-data complexity and methodological flaws in the Government's own submissions. Opp'n at 25. But *Connolly*'s core holding was broader: "fundamental fairness demands . . . the

Government identify a manageable subset within the universe of data that is actually relevant to the courtroom presentation." No. 16 Cr. 370 (CM), 2017 WL 2537808, at *5 (S.D.N.Y. May 24, 2017). Here, tens of thousands of invoices, financial statements, and borrowing base certificates were submitted over seven years, and the Government contends that only a fraction are fraudulent.

*United States v. Hanratty* is closer still. On materially analogous facts, the court ordered the Government to identify the specific asset listings in borrowing base certificates it "intends to prove w[ere] fraudulent[.]" No. 24 Cr. 153 (LGS), 2024 WL 4892742, at *8 (S.D.N.Y. Nov. 26, 2024). It reasoned that the production of "approximately forty final [borrowing base certificates]" over the charged period, which "may contain over 40,000 assets for Defendant to sift through," made particulars necessary. *Id.* This case involves borrowing base certificates over a longer period and a substantially larger universe of underlying assets. If *Hanratty* required particulars on those facts, this case requires them here too.

**D. *Wang*'s Transaction-Identification Holding Directly Supports the Request**

In *Wang*, this Court rejected the Government's argument that discovery volume eliminates the need for particulars. *See* 2024 WL 1251105, at *5. It held that "the Government cannot rely on discovery where . . . the 'large volume of material disclosed' forces the defendant to 'attempt to guess at which transactions, during a [five]-year period, were allegedly improper.'" *Id.* The same principle controls here. This case involves a seven-year period, 4.5 million documents, and tens of thousands of transactions—an even stronger case for particulars than *Wang*.

**E. The Government's Contrary Authority is Misapplied**

The Government's reliance on *Kahale*, *Ikoli*, *Rajaratnam*, and *Mandell* (Opp'n at 24, 31–32) misses critical differences. In *Kahale*, the Government had provided detailed descriptions in its motion papers of the alleged misrepresentations. *See* 789 F. Supp. 2d at 375–76. In *United States v. Ikoli*, the Government had represented that it would meet with defense counsel to discuss

the discovery and its relation to each charge. *See* No. 16 Cr. 148 (AJN), 2017 WL 396681, at *6 (S.D.N.Y. Jan. 26, 2017). In *United States v. Rajaratnam*, the defendants could draw inferences directly from wiretap recordings. *See* No. 09 Cr. 1184 (RJH), 2010 WL 2788168, at *9 (S.D.N.Y. July 13, 2010). In *United States v. Mandell*, the 34-page indictment already "catalog[ed]" the "falsehoods and omissions with great specificity." 710 F. Supp. 2d 368, 385 (S.D.N.Y. 2010). None of those cases involved the volume, temporal scope, or structural complexity of this case, and none involved a prosecution that, like this one, disclosed only illustrative examples while expressly reserving the right to prove more.

### F. Confinement is the Point of a Bill of Particulars

The Government warns that a bill of particulars will "confine" its proof at trial. Opp'n at 10 (quoting *United States v. Feola*, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987)). But confinement is the remedy's purpose, not a defect. A bill of particulars prevents the Government from changing its theory of prosecution without notice. It thus prevents the very surprise that Rule 7(f) targets. *See Davidoff*, 845 F.2d at 1154; *see also Ho*, 2026 WL 1535022, at *6 (ordering a bill of particulars "to ensure that the Government's theory of the case is fixed in order to minimize prejudicial surprise at trial"). Taken to its logical conclusion, the Government's objection would make Rule 7(f) a dead letter in every case.

## CONCLUSION

For these reasons and those in his opening brief, Mr. James respectfully requests that the Court order the Government to provide a bill of particulars identifying (i) the alleged co-conspirators, (ii) the financial institutions allegedly affected or defrauded and any other alleged victims and third parties, and (iii) the allegedly false or misleading statements, invoices, representations, and omissions on which the Government intends to rely at trial.

Dated: September 14, 2026
New York, New York

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Scott Hartman
William Burck
Sara Clark (*pro hac vice*)
Erica Perdomo (*pro hac vice*)
295 Fifth Avenue
New York, New York 10016
Telephone: (212) 849-7000
scotthartman@quinnemanuel.com
williamburck@quinnemanuel.com
saraclark@quinnemanuel.com
ericaperdomo@quinnemanuel.com

**CERTIFICATE OF SERVICE**

I hereby certify that on September 14, 2026, I caused a copy of the foregoing document to be served via ECF on all counsel of record.

/s/ *Scott Hartman*
Scott Hartman