UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-against-

PATRICK JAMES and EDWARD JAMES,

Defendants.

26 Cr. 29-1 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Defendant Patrick James seeks an order quashing subpoenas issued by the Government to third parties pursuant to Federal Rules of Criminal Procedure 17(a) and 17(c). *See* Mot. at 1–2, ECF No. 106. James argues that the subpoenas are overbroad, "irrelevant[,] and inadmissible." *Id.* at 2.[1] For the reasons stated below, James' motion is DENIED, and the Court permits the issuance of subpoenas with modifications.

## BACKGROUND

### I. Indictment

On January 27, 2026, Patrick James and his co-Defendant and brother, Edward James,[2] were charged in a nine-count indictment with various financial crimes related to the James brothers' management of First Brands Group, LLC ("First Brands"), an automotive aftermarket parts supplier. *See* Indictment ¶ 4, ECF No. 1. Specifically, James is charged with: organizing, managing, and supervising a continuing financial crimes enterprise in Count One, *see id.* ¶ 37; conspiracy to commit wire fraud affecting a financial institution and bank fraud in Count Two, *see id.* ¶¶ 39–41; wire fraud affecting a financial institution in Counts Three, Four, Six, and

[1] James initially contended that the subpoena served on Tristate Capital Bank was also procedurally improper, *see* Mot. at 16–17, but concedes that the Government's revision of this subpoena "moots . . . the procedural defect." Reply at 1, ECF No. 132.

[2] The Court uses "James" to refer solely to Patrick James. Edward James is identified by his full name. The Court refers to the brothers collectively as "the James brothers" or "Defendants."

Eight; *id.* ¶¶ 43, 45; bank fraud in Counts Five and Seven, *id.* ¶¶ 47, 51; and conspiracy to commit money laundering in Count Nine, *id.* ¶ 55.

The indictment alleges that these crimes were carried out through a series of fraudulent actions whereby Defendants directed and approved: (1) submitting fake and falsely-inflated invoices to third parties to obtain accounts receivable financing through "factoring" arrangements ("accounts receivable financing fraud"), *id.* ¶¶ 12–15; (2) submitting false and misleading information concerning First Brands' accounts payable to third parties in order to obtain financing ("accounts payable financing fraud"), *id.* ¶¶ 16–20; (3) concealing liens and encumbrances on First Brands' assets in order to obtain financing from lenders ("lending fraud"), *id.* ¶¶ 21–26, 30–33; and (4) routing payments to certain lenders through methods "designed to . . . prevent lenders and auditors from detecting the existence and magnitude of [concealed] off-balance-sheet debt," *id.* ¶¶ 27–29.

II. <u>Motion to Quash</u>

James seeks to quash two subpoenas served on Tristate Capital Bank ("Tristate") and Tristate's vice president Robert Rutt (the "Tristate Subpoena" and the "Rutt Subpoena," respectively). *See* Mot. at 1, 4. Tristate is a financial institution that refinanced Red Rock Stamping, LLC and Tremont Manufacturing, LLC's debt in April of 2008, when both companies were owned by James. *See* Mot. at 4. After Red Rock and Tremont wound down and surrendered collateral to Tristate, Tristate initiated an action titled *Tristate Capital Bank v. Red Rock Stamping et al.*, No. 09 Civ. 01455 (N.D. Oh.) (the "Tristate Case") against James, his wife Elizabeth James, and the two companies. *See* Mot. at 4; Hartman Decl., Ex. 6 ("*Tristate* Am. Compl."), ECF No. 107-6. The Tristate Case alleged, *inter alia*, fraud and conspiracy to defraud, *Tristate* Am. Compl. ¶¶ 69–139, citing "undisclosed offsets to the accounts receivable," *id.* ¶ 31,

the "creat[ion of] false payable entries," *id.* ¶ 40, and the "fraudulent[ ] transfer [of] inventory . . . without adequate consideration" among James-owned companies, *id.* ¶ 49. The parties reached a settlement, and the Tristate Case was never adjudicated. *See* Mot. at 5; Hartman Decl., Ex. 4 (transcript of settlement hearing).

The Tristate Subpoena requires Tristate to produce: "(1) All communications with Patrick James between 2008 and 2010; (2) All communications with Elizabeth James between 2008 and 2010;[3] [and] (3) All documents related to [the Tristate Case]." *See* Revised Tristate Subpoena at 3, ECF No. 124-1. The Rutt subpoena requires Rutt to appear at trial on February 9, 2027, to testify and give evidence. *See* Rutt Subpoena at 1, ECF No. 107-2. Tristate is not seeking to quash the Tristate Subpoena. *See* Opp. at 3, ECF No. 124.

**LEGAL STANDARD**

In the criminal context, subpoenas are governed by Federal Rule of Criminal Procedure 17. *See United States v. Reyes*, 162 F.R.D. 468, 469 (S.D.N.Y. 1995); Fed R. Crim. P. 17. Rule 17(c) "governs the issuance of subpoenas *duces tecum* . . . to obtain documents or other physical evidence." *Id.* It provides that "[a] subpoena may order the witness to produce any . . . documents, data, or other objects the subpoena designates." Fed. R. Crim. P. 17(c)(1). Rule 17(a) governs witnesses subpoenaed to provide testimony. *Reyes*, 162 F.R.D. at 469; *see United States v. Menendez*, 23 Cr. 490, 2024 WL 2801960, at *1 (S.D.N.Y. May 31, 2024). It states that a subpoena may "command the witness to attend and testify at the time and place the subpoena specifies." Fed. R. Crim. P. 17(a).

[3] At the time of the Tristate Case, Elizabeth James co-owned the companies involved. *See Tristate* Am. Compl. ¶¶ 8, 65.

I. Standing to Challenge Rule 17 Subpoenas

Generally, a party lacks standing to challenge a subpoena issued to a third party under Rule 17. *See United States v. Nachamie*, 91 F. Supp. 2d 552, 558 (S.D.N.Y. 2000). An exception applies when the party moving to quash can demonstrate they have "legitimate interests" in challenging the third-party subpoena, *United States v. Bergstein*, No. 16 Cr. 746, 2017 WL 6887596, at *2 (S.D.N.Y. Dec. 28, 2017), which typically requires "a claim of privilege or a proprietary interest in the subpoenaed material." *See Nachamie*, 91 F. Supp. 2d at 558; *United States v. Reyes*, 162 F.R.D. 468, 470–71 (S.D.N.Y. 1995) (citing *Lanford v. Chrysler Motors Corp.*, 513 F.2d 1121 (2d Cir. 1975)). Notwithstanding this rule, "regardless of whether the [movant] has standing, the Court is obligated under Rule 17 to assess each subpoena for compliance." *United States v. Binh Tang Vo*, 78 F. Supp. 3d 171, 176 (D.D.C. 2015) (collecting cases); *see also Nachamie*, 91 F. Supp. 2d at 561 ("before a court issues a Rule 17(c) subpoena, it must be satisfied that the subpoena complies with the requirements of the Rule").

II. Federal Rule of Criminal Procedure 17(c)

The purpose of Rule 17(c) is to facilitate trial by designating a time and place prior to trial for the defendant to obtain and inspect evidentiary material. *See United States v. Nixon,* 418 U.S. 683, 698–99 (1974) (citing *Bowman Dairy Co. v. United States,* 341 U.S. 214, 220 (1951)). The rule, however, "was not intended to provide an additional means of discovery." *Bowman Dairy Co.,* 341 U.S. at 220; *see also Nixon,* 418 U.S. at 698–99. As a result, "[c]ourts must be careful that [R]ule 17(c) is not turned into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in [Rule] 16." *United States v. Cherry,* 876 F. Supp. 547, 552 (S.D.N.Y. 1995) (quoting *United States v. Cuthbertson,* 630 F.2d 139, 146 (3d Cir. 1980)).

A proper Rule 17(c) subpoena, therefore, "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." *United States v. Nixon*, 418 U.S. 683, 699 (1974). Relatedly, a party seeking to use Rule 17(c) "must be able to reasonably specify the information contained or believed to be contained in the documents sought rather than merely hope that something useful will turn up." *United States v. Mendinueta-Ibarro*, 956 F. Supp. 2d 511, 513 (S.D.N.Y. 2013) (citation omitted).

III. Federal Rule of Criminal Procedure 17(a)

Although Rule 17 does not expressly authorize motions to quash subpoenas to testify,[4] courts have adjudicated such motions. *See United States v. Goldstein*, No. 21 Cr. 550, 2023 WL 3662971, at *5 (E.D.N.Y. May 25, 2023) (citing *United States v. Klubock*, 639 F. Supp. 117, 123 (D. Mass. 1986)). Subpoenas for witness testimony under Rule 17(a) are governed by "[r]oughly the same standard" that applies under Rule 17(c). *Stern v. U.S. Dist. Ct. for Dist. of Mass.*, 214 F.3d 4, 17 (1st Cir. 2000). "Specifically, a subpoena *ad testificandum* survives scrutiny if the party serving it can show that the testimony sought is both relevant and material." *Id.* (citations omitted); *see United States v. Alexander*, 24 Cr. 676, 2026 WL 292913, at *1–2 (S.D.N.Y. Feb. 4, 2026).

## DISCUSSION

I. Standing

James lacks a legitimate interest in the subpoenaed material sufficient to support standing. He does not identify a claim of privilege or a proprietary interest with respect to any portion of the subpoenas. *See* Mot. 8–10; *see also Nachamie*, 91 F. Supp. 2d at 558 (explaining that

[4] Rule 17(c) states, "[o]n motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). Rule 17(a), by contrast, does not contain language establishing a procedure or standard for quashing a subpoena issued pursuant to that provision. Fed. R. Crim. P. 17(a).

privilege and proprietary interests are the primary bases for standing to quash a third-party subpoena). Rather, James argues that he has a privacy interest in "the corporate financial information the Tristate Subpoena demands." Mot. at 8. Yet he cites only cases analyzing motions to quash under the Federal Rules of Civil Procedure, identifying no authority for the proposition that general privacy interests confer standing to quash a third-party subpoena under the Federal Rules of Criminal Procedure. *See* Mot. at 9–10 (citing *Silverstone Holding Grp., LLC v. Zhongtie Dacheng (Zhuhai) Inv. Mgmt. Co., Ltd.*, 650 F. Supp. 3d 199 (S.D.N.Y. 2023); *MG Freesites Ltd. V. Scorpcast, LLC*, No. 22 Misc. 361, 2023 WL 2822272 (S.D.N.Y. Apr. 7, 2023); *State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., Inc.*, No. 04 Civ. 5045, 2008 WL 11429741 (E.D.N.Y. June 24, 2008)). James' unsupported contention that he can show standing based on generalized privacy interests cannot be squared with caselaw identifying privilege and proprietary interests as sources of standing. *See, e.g., Nachamie*, 91 F. Supp. 2d at 558; *Reyes*, 162 F.R.D. 468, 470–71. These much narrower grounds for standing would be unnecessary if any "recognized privacy interest" sufficed. Mot. at 9; *see also Nachamie*, 91 F. Supp. 2d at 560 (rejecting overly "elastic" view of standing to challenge a Rule 17(c) subpoena). The Court concludes, therefore, that James lacks standing to challenge the subpoenas.

Even absent standing, the Court still has an independent duty to review the subpoenas' compliance with Rule 17. *United States v. Bergstein*, 2017 WL 6887596, at *3 (S.D.N.Y. Dec. 28, 2017) (collecting cases); *Binh Tang Vo*, 78 F. Supp. 3d at 176. Given the risk of an abuse of the subpoena power, which "directly implicates the court itself and creates an embarrassment for the institution," *Binh Tang Vo*, 78 F. Supp. 3d at 176, the Court proceeds to consider the subpoenas' propriety.

II. Merits

Having independently reviewed the subpoenas, the Court concludes that quashing is not warranted but modifies the Tristate subpoena. *Bergstein*, 2017 WL 6887596, at *3.

A. Tristate Subpoena

The Tristate Subpoena, a subpoena *duces tecum*, is governed by Rule 17(c). With modifications discussed below, the subpoena is proper under this rule because the evidence sought is relevant, admissible, and specific. *See Nixon*, 418 U.S. at 699.

1. Relevancy

Under Federal Rule of Evidence 401, "evidence is 'relevant' if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *United States v. Abu-Jihaad*, 630 F.3d 102, 131–32 (2d Cir. 2010) (quoting Fed. R. Evid. 401). This requirement "is a 'low threshold, easily satisfied.'" *United States v. Garnes*, 102 F.4th 628, 638 (2d Cir. 2024) (quoting *United States v. Gramins*, 939 F.3d 429, 450 (2d Cir. 2019)).

The Tristate Subpoena seeks evidence regarding conduct alleged in the Tristate Case, which is substantially similar to the allegations in the indictment. *See* Opp. at 7. Both the allegations in the Tristate Case and those in the indictment involve extensive financial fraud through misrepresentations regarding accounts receivable, the encumbrance of various assets, and false payable entries in internal records. *See generally* Indictment; Tristate Case Compl., ECF No. 107–6. The Government plans to use the information provided by the Tristate Subpoena to demonstrate James' knowledge and intent, *id.*, which satisfies the relevancy requirement. *See Nachamie*, 91 F. Supp. 2d at 563 (stating that requested records are relevant

because they go "to the issues of knowledge and intent").[5] Contrary to James' assertion, *see* Mot. at 12–13, the mere fact that the conduct at issue in the Tristate Case significantly predates the analogous scheme alleged in the indictment does not prevent the Government from meeting the low bar for relevance. *See Garnes*, 102 F.4th at 638.

2. Admissibility

"[U]nless an exception applies, all '[r]elevant evidence is admissible.'" *United States v. White*, 692 F.3d 235, 246 (2d Cir. 2012) (quoting Fed. R. Evid. 401). James argues that the documents sought by the Tristate Subpoena are inadmissible under Federal Rules of Evidence 404(b), 403, and 408, and the bar on using Rule 17(c) subpoenas for impeachment evidence. *See* Opp. at 13–16. His arguments are uniformly unavailing.

First, James' objection that he has not received notice under Rule 404(b), *see* Mot. at 13–14, is irrelevant because the Government's Rule 404(b) disclosures are not due until November 17, 2026. *See* ECF No. 104.

Second, the materials sought do not constitute impermissible character evidence under Rule 404(b). *See* Mot. at 14. The Government states that it will use the subpoenaed evidence to establish knowledge, intent, and absence of mistake, not to argue that James has a propensity to commit the alleged conduct. *See* Opp. at 7–8. And although James is correct that the Government must prove to the jury that the underlying conduct alleged in the Tristate Case occurred, rather than relying on the mere fact of settlement, for these purposes, Mot. at 14, this observation does not render the evidence inadmissible. *See Huddleston v. United States*, 485 U.S. 681 (1988) (holding that courts need not make a preliminary finding that the defendant did, in fact, commit the alleged similar acts before evidence of such acts is submitted to a jury).

[5] With respect to communication between Elizabeth James and Tristate, the Government believes she was "acting as Patrick James' agent or co-conspirator," which would make her communications similarly relevant. *See* Opp. at 10.

Third, the subpoenaed evidence is not, as James argues, inadmissible under Rule 403, because any potential unfair prejudice, confusion, or undue delay due to its introduction will not substantially outweigh its probative value. *See* Mot. at 14–15. When evidence may "undermine[] the credibility of [a defendant's] defense theory" that he had no knowledge of the crime and "[is] not 'any more sensational or disturbing' than the charged crimes," it is admissible under Rule 403. *United States v. Atuana*, 816 Fed. Appx. 592, 595 (summary order) (quoting *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990)).

Fourth, James argues that under Rule 408, the existence of a settlement and conduct during negotiations are inadmissible. *See* Mot. at 15. However, Rule 408 only applies when this evidence is being used "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408. Because the Government does not plan to use this information for either of these purposes, *see* Opp. at 7, 9, Rule 408 does not apply.

Finally, James argues that Rule 17(c) materials cannot be used for impeachment. *See* Mot. at 15–16 (citing *United States v. Cherry*, 876 F. Supp. 547, 553 (S.D.N.Y. 1995)). The Government does not intend to use the subpoenaed evidence for impeachment, *see* Opp. at 7, 9, and, as stated, the subpoenaed material is relevant and admissible for other purposes.

In sum, the subpoenas satisfy the admissibility requirement. The Court also notes that no part of its decision here precludes James from raising Rules 404(b), 403, or 408 objections with respect to the evidence obtained using the Tristate Subpoena in his motions in limine. *See* ECF No. 104; *United States v. Chang*, 2024 WL 3567006, at *3 (E.D.N.Y. July 29, 2024) (refusing to quash subpoenas but noting the parties are "free to object . . . under Rule 403" in the future).

3. Specificity

Although the Government has slightly modified the Tristate Subpoena, further modification is necessary to satisfy the standard for specificity.

The Court rejects the Government's argument that it is subject to a different standard for specificity in Rule 17(c) subpoenas as compared to criminal defendants. *See* Opp. at 10–11 n.5. Courts across the country have applied the familiar specificity standard to government subpoenas. *See, e.g., United States v. Binh Tang Vo*, No. 13-168, 78 F. Supp. 3d 171, 181 (D.D.C. 2015); *United States v. Ji Chaoqun*, No. 18-Cr.-611, 2020 WL 6565259, at *1–2 (N.D. Ill. Nov. 9, 2020); *United States v. Kilgallon*, No. 21-Cr.-10023, 2021 WL 4750110, at *2 (D.S.D. Oct. 12, 2021).

The Government argues that the Tristate Subpoena nonetheless does not constitute "the type of 'fishing expedition' prohibited by *Nixon*," *Mendinueta-Ibarro*, 956 F. Supp. 2d at 513, because the limited scope of the underlying Tristate Case distinguishes the Government's requests from subpoenas held to be overbroad. The Court recognizes that, although requests for case files are in some circumstances insufficiently specific—*see, e.g., United States v. Skelos*, No. 15-CR-317, 2018 WL 2254538, at *3–4 (S.D.N.Y. May 17, 2018), *aff'd*, 988 F.3d 645 (2d Cir. 2021); *United States v. Kwok*, No. 23 CR. 118-1, 2024 WL 1719364, at *4–5 (S.D.N.Y. Apr. 22, 2024)—in this case, the "'entire civil action' consists of a time-limited, single-loan relationship between Patrick James' entities and Tristate." Opp. at 10. Similarly, with respect to the records of communications between Tristate and James, and Tristate and Elizabeth James, from 2008 to 2010, the records are "inherently limited in subject matter, because the extent of the[ir] relationship with Tristate involved a single credit facility." *Id.*; *see also* Revised Tristate

Subpoena at 3.[6] The Government, however, offers no justification for failing to explicitly incorporate these "inherent limit[ations] in subject matter" into their requests, or for failing to impose any time limit on their request for documents related to the *Tristate* Case. *See* Opp. at 10.

The Court, therefore, modifies the Tristate Subpoena as follows: (1) adding language to requests 1 and 2 after the word "2010" specifying that the communications sought are "related to credit facilities, refinancing, and/or entities owned by and/or affiliated with Patrick James"; and (2) limiting request 3 to documents dated on or before November 2, 2010, the date the *Tristate* Case was dismissed with prejudice. Within these bounds, the Government has "reasonably specif[ied] the information contained or believed to be contained in the documents sought" by providing a specific theory and basis for suggesting that the Tristate Subpoena would return relevant evidence. *Mendinueta-Ibarro*, 956 F. Supp. 2d at 513 (citation omitted). The Court concludes that, as modified, the Tristate Subpoena satisfies the specificity requirement.

B. Rutt Subpoena

The Rutt Subpoena is proper under Rule 17(a), for materially the same reasons as the Tristate Subpoena. As an executive at Tristate, Rutt has knowledge of the events giving rise to the *Tristate* Case, which the Court has already held are relevant and admissible for the purpose of this motion. *See infra* at 7–8. Additionally, Rutt's testimony regarding James' conduct will be used to establish his knowledge and intent with respect to the offenses alleged in the indictment and to undermine an anticipated defense theory of mistake, rendering it material. *See*

---

[6] Courts that have quashed subpoenas seeking "all communications" between certain parties were faced with a much broader universe of documents, an interest in protecting witnesses, or both. *See, e.g., United States v. Weigand*, 520 F. Supp. 3d 609, 615 (S.D.N.Y. 2021) (quashing subpoena for "all communications between [a company] and certain entities over a six-year period, including "[c]ommunications [with] *any* Marijuana Dispensaries" (emphasis added)); *Mendinueta-Ibarro*, 956 F. Supp. 2d at 512–515 (quashing subpoenas for "'any and all writings and records' related to the NYPD's contact with a particular confidential witness").

Opp. at 7–8; *see also Alexander*, 2026 WL 292913, at *2 n.5 (reasoning that testimony which could rebut an opposing party's theory is material for Rule 17(a) purposes). The Rutt Subpoena, therefore, shall not be quashed.

**CONCLUSION**

For the reasons stated above, James' motion to quash is DENIED, but the Government is directed to modify the Tristate Subpoena in accordance with this order.

SO ORDERED.

Dated: November 2, 2026
New York, New York

ANALISA TORRES
United States District Judge