quinn emanuel trial lawyers | new york
295 5th Avenue, New York, New York 10016-7103 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(202) 538-8120**

WRITER'S EMAIL ADDRESS
**williamburck@quinnemanuel.com**

November 5, 2026

**VIA ECF**

Hon. Valerie E. Caproni
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl St., Chambers 1930
New York, NY 10007-1312

Re: United States v. Patrick James and Edward James, 26-CR-00029-VEC

Dear Judge Caproni:

We write on behalf of Defendant Patrick James to request that the Court adjourn the February 9, 2027, trial date to June 21, 2027, or as soon thereafter as the Court finds convenient, and make corresponding adjustments to the remaining pretrial deadlines.[1]

First and foremost, and as described more fully below, the undersigned wishes to bring to the Court's attention that [redacted].[2] [redacted]

[1] Prior to this case being reassigned to this Court, the defense sought the Government's position on this request. The Government opposes the requested adjournment. Counsel for co-defendant Edward James does not oppose the request. This is Mr. James's second request to modify the trial schedule. *See* ECF No. 43. Mr. James notes that the proposed date does not appear to conflict with the Court's calendar or with trials involving counsel for the Government or Mr. James, and it accommodates a May 2027 trial in the Eastern District of New York involving two core members of Mr. James's defense team.

[2] Sensitive personal health information and information that is subject to the governing protective order in this case have been redacted, consistent with redactions submitted in prior submissions in this matter. Counsel has conferred and the Government consents to these redactions.

[redacted] Other circumstances equally support a modest adjournment: the Government has yet to complete its production of discovery—now totaling nearly 19 million pages—and has recently opened new investigative fronts; Court-authorized third-party discovery is largely outstanding; the insurers that fund Mr. James's defense have refused to advance defense costs in violation of the terms of their policies, leaving vendors and experts unpaid; several of Mr. James's requests for pretrial discovery have been unresolved for months; and significant motions remain pending. Absent an adjournment, Mr. James will be forced to trial without a meaningful opportunity to access and review the evidence against him, present a fulsome defense, or prepare in light of the Court's forthcoming rulings.

## I. __Background__

On January 27, 2026, a grand jury returned a nine-count Indictment charging Mr. James and his brother, co-defendant Edward James, in connection with the financing practices of First Brands Group ("FBG"), an automotive-parts supplier that filed for bankruptcy in September 2025. The Indictment charges Mr. James with operating a continuing financial crimes enterprise, conspiracy to commit wire and bank fraud, substantive wire and bank fraud, and conspiracy to commit money laundering, based on four alleged schemes involving FBG's accounts-receivable factoring, supply-chain financing, off-balance-sheet inventory financing, and financial statements. *See* ECF No. 2; ECF No. 128 at 1–2. At the initial pretrial conference on February 4, 2026, Judge Torres set trial for July 13, 2026, with pretrial motions due May 1, 2026. *See* ECF No. 45 at 2.

The Government made its first discovery production on February 17, 2026. *See* ECF No. 101 at 6. By mid-April, it had produced approximately seven million pages drawn from roughly 1.7 million documents, and it had not yet completed its responsiveness review of search warrant returns obtained nearly a year earlier, including returns from an April 2025 warrant for FBG email accounts. *See* ECF No. 47 at 3, 7 & n.4; ECF No. 118 at 8–9.

On April 10, 2026, Mr. James requested a conference to discuss the trial schedule in light of the volume of discovery produced at that point, the complexity of the allegations, and the discovery disputes that had already materialized. ECF No. 43 at 1. The Government opposed, representing that "[b]y April 27, the Government will have produced nearly all the Rule 16 material in its possession." ECF No. 45 at 2. On April 30, 2026, the Government represented that its "production of Rule 16 discovery is substantially complete" and that it "anticipate[d] producing the *limited* remaining materials in its possession no later than June 1." ECF No. 53 at 1 (emphasis added). Judge Torres subsequently set trial for February 9, 2027, ECF No. 59, approximately eight months following the Government's anticipated completion of discovery, with pretrial motions due September 4, 2026, ECF No. 83.

Meanwhile, beginning in March 2026, Mr. James repeatedly asked the Government to obtain and produce complete FBG custodial files and other FBG materials. *See* ECF No. 137 at 4. FBG had cooperated with the Government since at least September 2025, producing curated sets of documents of its own choosing. *See* ECF No. 113 at 7–11; ECF No. 118 at 3–4, 7–8. However, the Government has disclaimed any "obligation to obtain those records" that FBG has not produced. ECF No. 115-32 at 4. Left to obtain those records himself, Mr. James turned to Rule 17(c), and on August 7, 2026, Judge Torres authorized him to serve a subpoena on FBG, as modified. Within weeks, however, the United States Bankruptcy Court for the Southern District

of Texas (the "Bankruptcy Court") converted FBG's chapter 11 bankruptcy cases to chapter 7 cases, and responsibility for compliance passed from the debtors in possession in those chapter 11 cases to a recently appointed chapter 7 trustee, who has yet to make any substantive production. *See infra* Part II.D. On September 4, 2026, Mr. James also moved to compel the Government to obtain and produce materials in the possession of FBG's bankruptcy professionals, on the ground that they functioned as part of the prosecution team. *See* ECF No. 113. That motion, among others described below, remains pending.

On September 3, 2026, Judge Torres entered a pretrial scheduling order setting deadlines for expert disclosures, *Daubert* motions, Rule 404(b) notice, § 3500 and *Giglio* material, exhibit and witness lists, motions in limine, and the parties' remaining disclosures, culminating in a final pretrial conference on February 1, 2027, and trial on February 9, 2027. ECF No. 104. On October 6, 2026, Judge Torres granted the parties' joint request—made with the Government's agreement and premised on "the complexity of the issues involved"—to extend the expert and *Daubert* deadlines, with *Daubert* replies now due January 26, 2027. ECF No. 139.

On September 4, 2026, the defendants filed their pretrial motions, which seek, among other things, bills of particulars, severance, dismissal, suppression, preclusion of untimely disclosed evidence, and orders compelling discovery. *See infra* Part II.G. Briefing on those motions closed on November 2, 2026. *See* ECF No. 83 at 2. On September 30, 2026, Judge Torres adjourned the scheduled October 5 status conference and indicated that she would rule on the pending motions in due course. ECF No. 136. On November 3, 2026, before those motions were decided, the case was reassigned to this Court.

Time is currently excluded under the Speedy Trial Act through February 9, 2027. *See* ECF No. 76. Mr. James consents to the further exclusion of time under 18 U.S.C. § 3161(h)(7)(A) from February 9, 2027, through the adjourned trial date, and respectfully submits that the ends of justice served by the requested adjournment outweigh the interest of the public and the defendant in a speedy trial.

## II. <u>Argument</u>

District courts have broad discretion to adjourn a trial, *see United States v. Stringer*, 730 F.3d 120, 127 (2d Cir. 2013), but "a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality," *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). In exercising that discretion, courts consider, among other things, whether the case is so complex that adequate preparation cannot reasonably be expected on the existing schedule, and whether denying an adjournment would deprive the defendant of continuity of counsel or of the time necessary for effective preparation. *See* 18 U.S.C. § 3161(h)(7)(B)(ii), (iv); *United States v. Smith*, 660 F. Supp. 3d 210, 216 (S.D.N.Y. 2023) (concluding continuance warranted where case was "extraordinarily evidence-intensive and complex," involved "gigabytes of discovery" that could not be reviewed "without very significant investments of time," and presented "plainly 'novel questions of fact' and arguably novel questions of law").

Each of those considerations favors an adjournment here; the circumstances that warranted one in April have only persisted or worsened. [redacted] (II.A). The discovery is massive and still growing (II.B), and the underlying facts are complex (II.C). Court-authorized third-party discovery remains largely outstanding (II.D), and the insurers' unjustified refusal to advance defense costs has left vendors and experts unpaid (II.E). The defense has yet to receive a usable production of search warrant returns that require extensive privilege review (II.F), and significant motions that will shape the trial remain pending before a newly assigned Court (II.G). Finally, the requested adjournment is modest and tailored to the earliest practicable date (II.H).

**A.** [redacted]

[redacted]

**B. The voluminous and still-growing discovery cannot be reviewed before February**

The volume and pace of the Government's productions alone make effective preparation for trial impossible on the current schedule. 18 U.S.C. § 3161(h)(7)(B)(iv). Since April 2026, when the Government represented that its production was "substantially complete," ECF No. 53 at 1, the volume of discovery has nearly tripled—from approximately seven million pages (roughly 1.7 million documents) to approximately 19 million pages (4.6 million documents). *See* ECF No. 116 at 5. These materials come from more than 130 producing parties and include internal communications, financial records, accounting data, and transaction records dating back as far as 1990. *See* ECF No. 54 at 1. Many of these materials come from third parties and lack substantial metadata, which makes their review even more cumbersome. The defense must manually

---

3 [redacted]

reconstruct their context, identify the relevant participants and transactions, and determine how each relates to the allegations in the Indictment. *See* ECF No. 43 at 2.

Further complicating the review, the Government's record keeps growing. Since its April representation, the Government has made at least twelve substantive productions—including more than 1.8 million pages of search-warrant materials, tax records, and third-party documents on May 12, 2026; another 120,000 pages of warrant returns on May 20; and more than 130,000 pages of third-party material on July 16—much of it obtained through new grand jury subpoenas issued *after* the Government's April representation.[4] *See* ECF No. 137 at 3–4.

Nor did the Government finish by the September 4 pretrial motions deadline—more than three months after the June 1 date by which it had promised to produce the "limited remaining materials" in its possession. ECF No. 53 at 1. To the contrary, it has made nine productions since that deadline: September 11, 14, 15, 22, and 29 and October 5, 7, 15, and 30. Those productions included, on September 15, Mr. James's own files from FBG, nearly six months after he first requested complete FBG productions. ECF No. 137 at 4–5. They also included, on October 5, materials identified as responsive to the April 2025 warrant for FBG email accounts issued in the Northern District of Ohio. The Government told the Court in April that it expected to produce those returns by April 27, *see* ECF No. 45 at 5, yet it is still producing them some eighteen months after the warrant issued.

There is also no end in sight. The Government has declined to commit to any completion date because "it continues to receive records responsive to grand jury subpoenas," ECF No. 45 at 5; *see also* ECF No. 53 at 1 (third-party materials produced on a rolling basis). But, as described above, the Government's almost weekly productions are not merely cleanup productions related to long-outstanding subpoenas. Rather, [redacted].[5] *See* ECF No. 137 at 4–5. With roughly fourteen weeks left before trial, the defense cannot complete its review of the existing record—much less absorb further productions of unknown volume—under the current schedule, nor can it make timely and appropriate motions based on these late-produced and forthcoming materials. Courts in this District have adjourned trial in similar circumstances. *See United States v. Stein*, 461 F. Supp. 2d 201, 202–04 (S.D.N.Y. 2006) (adjourning trial *sine die* in light of, among other things, the government's production of "literally millions of pages of discovery—much (perhaps most) of it long after the . . . discovery deadline and evidently much only recently").

---

[4] The Government has also reproduced several productions that were provided to the Defendants without critical metadata that was provided to the Government with those same materials. These deficiencies have also slowed the pace of Defendants' review, through no fault of their own, and have necessitated repeated requests to the Government to provide third-party information in the same form received by—and presumably reviewed and utilized by—the Government. The defense should not be forced to operate at a technical disadvantage, nor to fight for a level playing field with respect to materials the Government agrees the defense is entitled to receive.

[5] [redacted].

### C. The complexity of the alleged schemes compounds the burden

The complex facts underlying this case independently make it "unreasonable to expect adequate preparation" on the current schedule. 18 U.S.C. § 3161(h)(7)(B)(ii). The Indictment alleges four distinct schemes—involving, among other things, accounts-receivable factoring, supply-chain financing, and off-balance-sheet inventory financing—each targeting different counterparties through different mechanisms, and together spanning thousands of transactions, communications, and participants over many years. *See* ECF No. 128 at 1–2; ECF No. 43 at 4. More than one hundred financial institutions appear in the discovery. ECF No. 128 at 1. The Government estimates that its case-in-chief alone will last four weeks,[6] and the defense cases are expected to add two to three more. *See* ECF No. 53 at 2. Recognizing the compounding impact of the complexity of the case and volume of discovery, Judge Torres has repeatedly excluded time to permit the parties to review discovery, each time anticipating the Government will, in fact, complete production. *See* ECF Nos. 52, 59, 76.

Defending against these allegations requires the defense to understand the mechanics of numerous financing arrangements, the relationships among the lenders, platforms, and intermediaries involved, and a vast body of accounting and transactional data. The invoice-level data the Government has produced on the factoring allegations alone covers more than 6.4 million invoices. *See* ECF No. 118 at 20 n.5. Yet the Government maintains that the defense should identify, from the ever-growing set of documents produced by the Government, the allegedly false statements and fraudulent invoices by comparing millions of records. *See* ECF No. 103 at 26. Whatever the merits of that position, the exercise it demands—together with the independent investigation, expert analysis, and consultation with Mr. James that any adequate defense requires—simply cannot be completed in the fourteen weeks that remain on a record that continues to grow. *See* ECF No. 128 at 11.

### D. Essential third-party discovery remains outstanding

Mr. James's ability to prepare is further limited because he has no access to FBG's documents: he must rely on the Government's delayed productions and whatever FBG produces under Rule 17(c). *See* ECF No. 43 at 4 n.3. FBG, however, has yet to produce anything of substance. Less than four weeks after Judge Torres authorized the subpoena, the Bankruptcy Court converted FBG's chapter 11 cases to cases under chapter 7. *See* Order Converting Chapter 11 Cases to Cases Under Chapter 7, *In re First Brands Grp., LLC*, No. 25-90399 (CML) (Bankr. S.D. Tex. Sept. 1, 2026), ECF No. 3748 (the "Conversion Order"). Upon conversion, the debtors in possession were displaced, and their professionals—including FBG's then-counsel, Weil, Gotshal & Manges LLP ("Weil")—no longer represent the estates. Decision-making authority over productions, privilege review, and related matters passed instead to a chapter 7 trustee appointed by the Office of the United States Trustee. The trustee, who had no prior involvement in the bankruptcy cases, has retained new counsel and is starting from scratch; that transition has necessarily taken time.

---

[6] Defendants confirmed the four-week estimate with the Government during a November 3, 2026, meet and confer.

Mr. James acted promptly to minimize the resulting delay. On September 3, 2026—two days after the Bankruptcy Court entered the Conversion Order—he wrote to the chapter 7 trustee, explaining that keeping the February 2027 trial date would require uninterrupted receipt of documents from FBG and seeking to coordinate compliance with the Rule 17(c) subpoena. Although the trustee has agreed to produce materials responsive to the subpoena, there have been no substantive productions to date, and trustee counsel has not provided a date certain by which production will occur. The conversion to chapter 7 has thus already caused a three-month delay in the production of documents under the Court-authorized subpoena. Even if the trustee were to complete its production promptly, the defense will require time to review those materials and incorporate them into its trial preparation.

The delay is particularly consequential because the FBG subpoena reaches not only materials the Government declined to obtain (such as certain communications of its key cooperator, Andrew Brumbergs), but also documents that FBG was permitted to withhold categorically as privileged. These are materials Mr. James needs in order to determine whether to provide notice of an advice-of-counsel defense by the current January 11, 2027 deadline. *See* ECF No. 104. The Government itself has emphasized the "time-consuming threshold issues that will attend a potential advice-of-counsel defense in this case," which "routinely require[] production of discovery, a hearing, and privilege waivers," particularly where, as here, "the attorney-client privilege is likely controlled by a corporation." ECF No. 101 at 7. Although the trustee has agreed, as a first step, to provide basic information about the withheld documents, that information is yet to be disclosed, and discussions regarding Mr. James's right to access and use those documents in his defense have not even begun. Compounding these difficulties, on October 28, 2026, FBG's former chapter 11 counsel, Weil, announced that it would wind down its operations. Counsel for the trustee has represented that she is working to obtain FBG's files from Weil, but that transition will further delay compliance with a subpoena that has now been outstanding for almost three months.

In addition, Mr. James's August 2026 application for leave to serve additional pretrial Rule 17(c) subpoenas remains pending. Even if that application were granted in the near term, service, compliance, any motions to quash, and review of responsive materials would require time beyond what the current schedule permits.

### E. The insurers' refusal to advance defense costs has impeded the defense's preparation

Mr. James's preparation is also constrained by disputes over the directors' and officers' insurance policies that fund his defense. Courts in this District have recognized that an unresolved dispute over the advancement of defense costs can warrant adjourning trial. *See Stein*, 461 F. Supp. 2d at 203–04 (adjourning trial because "the fee advancement issue cannot be resolved in time for [the scheduled] trial," and noting the "real and growing possibility" that defendants would "lack funds necessary to their defense"). As in *Stein*, an adjournment that allows Mr. James to access funds necessary for his defense is appropriate here.

In January 2026, the Bankruptcy Court held that, while the proceeds of certain primary and excess "Side A" policies are not property of the bankruptcy estates, the proceeds of the primary and excess "ABC" policies are estate property subject to the automatic stay. *See* Order, *In re First*

*Brands*, ECF No. 1231; Response of Patrick James ¶ 3 & n.7, *In re First Brands*, ECF No. 3848 (Oct. 1, 2026) ("James Response"). Edward James and certain Side A insurers appealed that decision, and the appeal remains pending. *See In re James*, No. 4:26 Civ. 513 (S.D. Tex.) (the "Appeal"). By order dated May 29, 2026, the Bankruptcy Court authorized the payment of defense costs under the ABC policies. *See* Order, *In re First Brands*, ECF No. 2845 (May 29, 2026) ("May 29 Order"). Mr. James maintains that the May 29 Order authorizes payment under both the primary and excess ABC policies, but the excess ABC insurers contend that the order is unclear and have moved for clarification. *See* Motion for Relief from Stay, *In re First Brands*, ECF No. 3669 (Aug. 14, 2026) (the "ABC Insurers' Motion"); James Response ¶¶ 1–5. The Bankruptcy Court held a preliminary hearing on the ABC Insurers' Motion on October 20, 2026. Mr. James maintains that the Bankruptcy Court reaffirmed the May 29 Order at that hearing, but the excess ABC insurers disagree and contend that whether the automatic stay applies to their policies remains unsettled, and they continue to refuse to advance funds under those policies. And, the Bankruptcy Court has indicated that it will not take further action on the ABC Insurers' Motion while the Appeal is pending. *See* Ex. 1, Hr'g Tr. at 7:5–19, *In re First Brands* (Oct. 20, 2026).

Separately, while the Bankruptcy Court found that Side A policies are not estate property, at least two insurers in the Side A tower have nonetheless denied coverage. And while a third has informally indicated (prior to providing a written coverage position) that it intends to drop down and provide coverage, the positions of the remaining Side A insurers are unclear. As a result, attorneys and vendors assisting in Mr. James's defense have incurred millions of dollars in fees and expenses that remain unpaid. *See* Sur-Reply of Patrick James ¶¶ 5, 7, *In re First Brands*, ECF No. 3920 (Oct. 16, 2026). Certain vendors have stopped work, and other vendors and experts have expressed concern about outstanding amounts owed. More fundamentally, while this issue remains unresolved, the defense will be unable to secure the testifying experts a case of this complexity requires—experts whose opinions must withstand scrutiny under Rule 702 and *Daubert*—without reasonable assurances of payment.

Mr. James expects these disputes to be resolved in the coming months, but at present they persist.

### F. The defense still awaits a usable production of search warrant returns requiring extensive privilege review

On August 19, 2026, nearly four months after representing that it had substantially completed production, the Government [redacted] Lisa Ruth, a known member of Mr. James's defense team, [redacted] the attorney-client privilege, the work-product doctrine, and Mr. James's Sixth Amendment rights. *See* ECF No. 137 at 1–3. The Government did not produce the [redacted] until September 14, after the pretrial motions deadline had passed. *See id.*; ECF No. 141 at 3–4.

Although the parties have agreed on a process to segregate and review potentially privileged material [redacted], *see* ECF No. 137 at 3, that review cannot meaningfully begin until the materials are provided to the defense in a usable format. On November 2, 2026, the Government represented that it will soon produce the relevant materials in a reviewable format—more than two months after [redacted] and more than one month after Mr. James

and the Government agreed to a protocol for the review of these documents. That production will purportedly consist of forensic extractions of [redacted]. Once the production arrives, the defense will begin a privilege review process that, based on the volume and type of materials seized, will likely take more than a month to complete, with several team members devoted to the review. That review is necessary to protect Mr. James's privilege and his right to counsel, but it also diverts defense time and resources from the review of the millions of pages of discovery already produced and from trial preparation more generally. *See id.* Moreover, [redacted] raises significant privilege and Sixth Amendment questions that may require additional motion practice. *See id.* But whether or not [redacted], the Government's decision to [redacted] at a minimum, necessitates additional time to review its results in a way that does not compromise Mr. James's rights.

### G. The pending motions will determine the shape of the trial

The pending motions likewise bear on Mr. James's ability to effectively prepare for trial. The Court currently has before it a substantial slate of pretrial motions, including the defendants' respective motions for a bill of particulars (ECF Nos. 85, 91, 103, 128, 129) and for severance (ECF Nos. 108, 111, 141, 143, 149, 155); Edward James's motion to dismiss (ECF Nos. 114, 143, 155); Mr. James's motions to compel production of Rule 16 and *Brady* material held by FBG, the Government, and other government entities (ECF Nos. 113, 116, 119, 143, 146, 148, 151); Edward James's motion to preclude untimely disclosed evidence and to compel production of discovery, which Mr. James has joined (ECF Nos. 118, 137, 143, 155); and Edward James's motion to suppress evidence obtained pursuant to certain search warrants (ECF Nos. 122, 143, 155). Briefing on these motions closed only on November 2, 2026. *See* ECF No. 83. Their resolution will determine whether Mr. James is tried jointly or separately, the particulars of the allegations he must meet, the scope of the discovery available to him, and the evidence the jury will hear. Additional motion practice is also forthcoming: we understand that Edward James intends to move for depositions under Federal Rule of Criminal Procedure 15, which, if granted, would need to be scheduled and completed before trial.

Mr. James recognizes that these motions raise substantial issues warranting careful consideration, and that several were supplemented after the motions deadline only because of the Government's late productions. *See, e.g.*, ECF Nos. 137, 141. That is all the more true now that the case has been reassigned and the Court will need time to familiarize itself with the extensive record and the fully briefed motions. An adjournment would allow the Court to resolve these motions with the benefit of full consideration, and would allow the parties to prepare for trial in accordance with the Court's rulings—rather than plan for multiple contingencies while motions *in limine* (through January 22, 2027) and *Daubert* briefing (through January 26, 2027) converge in the final weeks before trial. *See* ECF Nos. 104, 139. Courts routinely reset trial dates in these circumstances. *See, e.g.*, *United States v. Reed*, 253 F. Supp. 3d 52, 63–64 (D.D.C. 2017) (resetting trial date in light of "the substantial nature of the motions presently pending before the court," where briefing was not yet complete and the time needed to hold argument, issue a written opinion, and address other pretrial issues made the existing date "no longer realistic"); *United States v. Ahmed*, No. 12 Cr. 661 (SLT), 2014 WL 7399298, at *2 & n.2 (E.D.N.Y. Dec. 30, 2014) (adjourning trial in light of "the complexity of the case," fully briefed motions to dismiss requiring

"a reasonable amount of additional time" to resolve, and "numerous outstanding pre-trial matters").

### H. The requested adjournment is tailored to the earliest practicable date

Weighed against these considerations, the adjournment Mr. James seeks is modest. A June 21, 2027 trial would begin less than 17 months after the Indictment was returned—well below the 27.8-month median between indictment and jury trial in this District, *see* ECF No. 47 at 2, and within the range afforded in comparable complex financial-fraud prosecutions. *See, e.g.*, *United States v. Reichberg*, No. 16 Cr. 468 (GHW), 2018 WL 6599465, at *3, *13 (S.D.N.Y. Dec. 14, 2018) (noting that 28 months between indictment and trial was in line with other complex cases in the Circuit); *United States v. Skilling*, No. H-04-25 (S.D. Tex. 2004) (23 months between superseding indictment and trial of Enron CEO), ECF Nos. 16, 692; *United States v. Rigas*, 258 F. Supp. 2d 299, 303 (S.D.N.Y. 2003) (14 months between completion of Rule 16 discovery and trial).

The request is also narrowly drawn. Courts in this Circuit have recognized that a continuance is "appropriate or perhaps even required" where the requested delay is short or of fixed duration, the outstanding evidence is specified with particularity and critical to the defense, and the defendant has not been dilatory. *See United States v. Al Fawwaz*, 116 F. Supp. 3d 194, 210–11 (S.D.N.Y. 2015) (discussing *United States v. White*, 324 F.2d 814, 816 (2d Cir. 1963)) (denying further adjournment where those circumstances were absent). Each of those circumstances is present here. Mr. James seeks a fixed trial date, not an open-ended postponement. The request is tied to specific, identified materials that remain outstanding—FBG's production in response to the Court-authorized subpoena, including the documents FBG has withheld as privileged; the Government's forthcoming production of search warrant returns in a reviewable format; and the Government's continuing productions. Those materials bear directly on Mr. James's defense, including his decision whether to provide notice of an advice-of-counsel defense. And Mr. James has not been dilatory: he raised the need for an adjournment with the Government before its expert disclosures were due, and he makes this request more than three months before trial, promptly after the developments that necessitate it.

The proposed date is also the earliest practicable date that preserves Mr. James's "continuity of counsel." 18 U.S.C. § 3161(h)(7)(B)(iv). Two senior members of Mr. James's defense team, Mr. Hartman [redacted] and Sara Clark, are scheduled to begin a criminal trial on May 4, 2027.[7] A mid-June date would allow Mr. James to avoid the conflict presented by the other trial, while still providing for a prompt resolution of this matter. Where reasonably possible, courts in this District accommodate defense counsel's existing commitments to permit defendants to present their defense through the counsel of their choice, and Mr. James urges the Court to do so here under these extenuating circumstances. *See* ECF No. 43 at 1 n.1; ECF No. 47 at 1–2, 6; *see also Ahmed*, 2014 WL 7399298, at *2 (adjourning trial approximately three and a half months because, "[w]hile a shorter delay would be preferable," the new date was "the earliest date available for all defense counsel").

---

[7] The trial in *United States v. Chidambaran*, No. 26 Cr. 97 (NGG) (E.D.N.Y.), is scheduled to last four weeks. [redacted]

## I. A modest adjournment is appropriate

The Government has advised that it opposes this request, but it has not explained the basis for its opposition or identified any scheduling conflicts. To the extent the Government relies on the public's and alleged victims' interest in a speedy trial, *see* ECF No. 45 at 5–6, those interests do not override Mr. James's right to a meaningful opportunity to prepare his defense, and a modest adjournment will not materially prejudice them—particularly given that the Government's investigation is apparently ongoing. The Government's prior suggestion that well-resourced counsel can review discovery quickly with technological tools, *see id.* at 3–4, misses the point: incomplete and unusable productions, outstanding third-party discovery, a pending privilege review, and undecided motions are not problems that additional resources can solve. And the Government's concern about parallel civil discovery, *see id.* at 3, has been resolved: the Bankruptcy Court has stayed all discovery in the adversary proceeding against Mr. James pending the resolution of this case. *See* Order, *First Brands Grp., LLC v. James* (*In re First Brands Grp., LLC*), Adv. Pro. No. 25-03803 (CML) (Bankr. S.D. Tex. Apr. 17, 2026), ECF No. 181.

Finally, the need for additional time is not of Mr. James's making. The defense has diligently reviewed the Government's productions, proactively sought third-party discovery, and litigated pretrial motions on the Court's schedule. Many of the circumstances that now require an adjournment—productions that nearly tripled the volume of discovery in this case and continued long after the Government represented that discovery was substantially complete, the conversion of FBG's bankruptcy cases to chapter 7 after Judge Torres authorized the FBG subpoena, Weil's announced wind-down, the insurers' refusal to advance defense costs, [redacted]—arose after the current trial date was set. Mr. James should not be required to proceed to trial before he has had a fair opportunity to prepare.

## III. <u>Conclusion</u>

For the foregoing reasons, Mr. James respectfully requests that the Court (1) adjourn the trial from February 9, 2027, to June 21, 2027, or such later date as is convenient for the Court; (2) adjourn the remaining pretrial deadlines set forth in the Court's orders of September 3, 2026 (ECF No. 104) and October 6, 2026 (ECF No. 139), and the final pretrial conference, by a corresponding period or as the Court otherwise directs; and (3) extend the exclusion of time under the Speedy Trial Act, *see* ECF No. 76, through the adjourned trial date. In the alternative, Mr. James respectfully requests a conference at the Court's earliest convenience to address the trial schedule.

Mr. James raised the need for an adjournment with the Government before the Government's expert disclosures were due on October 30, 2026, *see* ECF No. 139, and the Government has proposed holding expert disclosures in abeyance pending resolution of this request. Accordingly, Mr. James respectfully requests that the Court address this request—or convene a status conference to discuss a revised schedule—at its earliest convenience. We thank the Court for its consideration.

Very truly yours,

William Burck

cc: Counsel of Record