**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob J, Javits Federal Building*
*26 Federal Plaza, 38th Floor*
*New York, New York 10278*

November 9, 2026

**BY ECF**

The Honorable Valerie E. Caproni
United States District Court
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007

**RE: *United States v. Patrick James and Edward James.*, 26 Cr. 29 (VEC)**

Dear Judge Caproni:

The Government opposes the requested adjournment of the trial scheduled to begin on February 9, 2027.[1] In April 2026, Judge Torres granted Patrick James's first adjournment request over the Government's objection. The Court should deny the instant request to delay trial another four-and-a-half months.

The Government was very sorry to learn of the [redacted] Here, however, counsel has not asked for a "modest" adjournment. Indeed, any modest accommodation is unworkable, due in part to defense counsel's decision to commit to a lengthy trial in another matter beginning in early May. That commitment is not good cause to adjourn trial in this case a second time.

Nor do any of Patrick James's other reasons justify an adjournment. The volume of the Government's discovery—an argument the defense raised to secure his first trial adjournment—is typical of a complex, white-collar case. As is the "still growing" nature of document productions, many of which involve materials from third parties that the Government will gain access to on the same timeline as the defense. And contrary to Patrick James's notion that a stop-work order issued in June 2026, the defense has been on notice for months that the Government's investigation remains ongoing. Indeed, Patrick James was sufficiently aware of the Government's ongoing investigation that he moved to quash the Government's grand jury and trial subpoenas (ECF Nos. 28, 56, 102, 145)—motions Judge Torres denied. Moreover, with three months remaining until trial, the parties have ample time to resolve any privilege issues that may arise with respect to [redacted] to Patrick James's chief of staff, Lisa Ruth. Finally, the Government

[1] Co-defendant Edward James, who is Patrick James's brother, does not oppose but has not joined in the motion to adjourn.

is not aware of any reason why the Court cannot decide the pending pretrial motions sufficiently in advance of the February 9 trial date.

On the other hand, delaying trial until at least June 21, 2027, if not later, is contrary to the public interest. More than a year ago, the defendants' fraudulent scheme drove First Brands into bankruptcy, inflicting billions of dollars in losses on victims, imperiling the jobs of 26,000 people, and creating the risk of imminent asset dissipation. Each of Patrick James's arguments in favor of adjournment is outweighed by the concrete and compounding prejudice such delay would impose on the victims of his crimes and other members of the public.

## I. The Defense's Characterization of Discovery Is Misleading and Does Not Justify an Adjournment

The Court should reject Patrick James's attempts to use the discovery record and outstanding subpoenas as grounds for an adjournment. As the Government explained in opposition to the defendants' Rule 16 motion, (ECF No. 143 at 62-71), the Government has complied with its discovery obligations, and the defendants' respective teams have more than enough time to review the discovery and prepare for trial.

*First*, Patrick James insists that the volume of discovery (4.6 million documents) is reason for delay. The number of documents produced is unremarkable for a complex fraud case, and the defendant does not explain why his well-resourced team of attorneys cannot review this amount of material in the months left before trial. Patrick James states that discovery has "nearly tripled" since April 2026, when the Government had produced 1.7 million documents. But on May 12, 2026, *i.e.*, a few weeks later and well before the Government's June 1, 2026 estimation for completing production of discoverable materials in its possession, the Government produced an additional 1.3 million documents of search warrant returns. The defendant therefore cannot dispute that he has had most of the Government's discovery nine months before trial.[2]

*Second*, the Court should reject Patrick James's arguments concerning the Government's document productions after June 1, 2026, the date by which the Government anticipated completing the production of Rule 16 material "in its possession." (ECF No. 53). There is nothing unusual or improper about the Government continuing to investigate and collect documents in the lead-up to trial, and the Government does not owe the defendant "an end in sight." (P. James Mot. at 5). In fact, Patrick James has been well-aware that the Government's investigation is ongoing, evidenced by his unsuccessful efforts to quash the Government's grand jury and trial subpoenas.

[2] Many of Patrick James's complaints demonstrate how the Government has worked with the defense to facilitate their discovery review and swiftly remedy inadvertent production gaps. For instance, at the defense's request, the Government produced metadata overlays to provide the defense with updated metadata. Additionally, after the defense highlighted a missing bates range in the Government's production, the Government requested and received a reproduction from First Brands, which it produced to the defense on September 15, 2026, a week after the defense raised the issue and nearly five months before trial. (ECF No. 143 at 70).

(ECF Nos. 28, 56, 102, 145). Consistent with its Rule 16 and *Brady* obligations, the Government has produced the documents collected from third parties during its ongoing investigation. That standard practice is hardly grounds for complaint, much less a trial continuance of over four months. In any event, Patrick James ignores that recent productions include materials that the defense requested the Government obtain from the SEC (which the Government did as a courtesy). They also include search warrant materials that the filter team only recently released to the case team for review, because the defense did not complete their privilege logs related to those materials until July 31, 2026. *See* ECF No. 143 at 77-79 (detailing chronology of the Government's responsiveness review, including the defendants' privilege assertions and the filter team's release of materials for review). The Government will promptly produce any additional materials it receives, including from the SEC.

*Third*, Patrick James's outstanding Rule 17(c) subpoenas are not good cause for adjournment. The defendant maintains that his Rule 17(c) subpoena to First Brands Group seeks "[e]ssential third-party discovery." (P. James Mot. at 6). If that were true, counsel could have raised any supposed deficiencies with FBG's production months ago, instead of waiting for a strategic moment—the pending adjournment request—to register his complaints.

On the merits, counsel for Patrick James has refused to provide the Government with a copy of the Rule 17(c) subpoena issued to First Brands Group, along with any other outstanding subpoenas.[3] Nonetheless, the defendant's description in his adjournment motion provides reason to question whether the FBG subpoena satisfies the *Nixon* standard. Notably, the subpoena requests, among other things, "certain communication of [the Government's] key cooperator, Andrew Brumbergs" (P. James Mot. at 7), which appears to be an improper request for impeachment materials that courts routinely deny. *See, e.g.*, *United States v. Cherry*, 876 F. Supp. 547, 553 (S.D.N.Y. 1995) ("Courts have consistently interpreted the admissibility standard of Rule 17(c) to preclude production of materials whose evidentiary use is limited to impeachment."). Finally, Patrick James notes that his applications to serve additional Rule 17(c) subpoenas remain pending. The Court has ample time to rule on those applications and permit the many lawyers on Patrick James's defense team to receive and review responsive records.

## II. The Government's Investigation into [redacted] Does Not Justify an Adjournment

The Government's investigation relating to Lisa Ruth is not reason to adjourn trial. Ruth is not a lawyer. She has never practiced law or been admitted to any bar. Ruth was Patrick James's chief of staff during the period charged in the Indictment. Following the First Brands bankruptcy, [redacted]

[3] To date the Government has received no Rule 16 materials from the defense, despite repeated requests for reciprocal discovery.

[redacted]

Patrick James contends that the Government's investigation of Ruth implicates his Sixth Amendment rights, because the Government has [redacted] a supposed member of his defense team [redacted]

Notwithstanding the dubious nature of Patrick James's claimed privilege, the Government has consented to a review protocol that is maximally protective of his communications with Ruth: The Government has agreed to utilize a filter team of attorneys who are not involved in this prosecution to make productions to allow Quinn Emanuel to review the Ruth materials in the first instance and create a privilege log. On October 23, 2026, the filter team furnished full extractions of Ruth's devices to Patrick James.

To avoid undue delay, the filter team initially produced the extractions in a format lacking Bates stamps. Counsel for Patrick James now claims that those extractions were not "usable." (P. James Mot. at 8). The defendant has never before raised that complaint, and it is not clear why a Bates stamp would prevent a substantive review of the material." In any event, on November 6, the Government produced another set of full extractions, this time in Cellebrite format containing Bates numbers. Furnished with two sets of extractions for the Ruth devices, Quinn Emanuel has ample resources to undertake a privilege review in time for this Court to rule on any privilege disputes in advance of trial. *See, e.g.*, *United States v. Wander*, 25 Cr. 473 (JPO) (July 30, 2026 Tr. at 44) (denying defense adjournment request made three months prior to trial where defense team led by Gibson, Dunn & Crutcher LLP "certainly has the resources to provide a privilege log" for the defendant's cellphone).

**III. [redacted] and Financial Issues Do Not Justify an Adjournment**

As noted above, the Government was very sorry to learn of the [redacted] In the ordinary course, the Government would be amenable to a short adjournment [redacted] Here, however, counsel proposes no plan to accommodate a modest adjournment.

Moreover, the fact that two lawyers on James's multi-member trial team have a trial on May 4 in *United States v. Chidambaran et al.*, 26 Cr. 97 (NGG) (E.D.N.Y.) should not persuade the Court to adjourn the instant trial. Defense counsel specifically requested to try that case on May 3 or any date thereafter. *Chidambaran et al.*, 26 Cr. 97 (NGG) (E.D.N.Y.) (ECF No. 64). Indeed, Judge Garaufis had sought to schedule trial in *Chidambaran* in January 2027. But counsel

---

[redacted]

for Chidambaran maintained that a January trial date in *Chidambaran* was unworkable, due to the February trial date in this matter. In mid-September 2026, when requesting a May 2027 trial date in *Chidambaran*, counsel for Patrick James was aware of the volume and ongoing nature of discovery in this matter, as well as the Government's investigation into [redacted] and its attendant privilege issues. Yet counsel made no mention of a potential adjournment.[5]

Further, Patrick James is incorrect that the proposed date avoids a conflict "with trials involving counsel for the Government." (P. James Mot. at 1 n.1). The Government informed counsel for Patrick James that it will be prepared whenever this Court sets a trial date. That was true and remains true. But the undersigned have trials scheduled in July, August, and September 2027. One or more of those trials inevitably would be disrupted if the Court were to grant the defendant's request to adjourn trial in this case to late June or thereafter. Moreover, when this trial was adjourned to February, Government counsel resolved other trial and professional conflicts to try this case on the schedule set by Judge Torres.

Finally, alleged fee disputes over Patrick James's $200 million defense fund do not support an adjournment. That fund comprises a $100 million Side "A" insurance policy and an additional $100 million Side "ABC" insurance policy. Patrick James acknowledges that the Bankruptcy Court ruled nearly a year ago that he could access the $100-million Side "A" policy. (P. James Mot. at 7). Further, on May 29, 2026, the Bankruptcy Court authorized payment of Patrick James's defense costs under the Side "ABC" policy, ostensibly opening up an additional $100 million for use by his defense team. The defendant nevertheless insists that fee disputes have "impeded" his trial preparation, pointing to "at least two" Side A insurers who have denied coverage and the "unclear" positions of others. (P. James Mot. at 8). Whatever amounts those insurers may threaten to withhold, Patrick James's defense team has had access to tens of millions of dollars under the relevant insurance policies. Nor has that team suggested funding issues will compromise its continued representation of Patrick James, much less has the team sought to be relieved of the representation.

Given the resources at Patrick James's disposal, James's reliance on *United States v. Stein*, 461 F. Supp. 2d 201 (S.D.N.Y. 2006) is entirely misplaced. That case involved allegations that the Government had improperly interfered with employer indemnification agreements that would cause some defendants to be unable to meet the cost of their defense. The circumstances facing the *Stein* defendants are a far cry from the insurance disputes allegedly affecting Patrick James's multi-member defense team, which were not caused by the Government and appear to be temporary. (P. James Mot. at 8 (noting that "Mr. James expects these disputes to be resolved in the coming months.")).

## IV. An Adjournment Will Prejudice the Public

Finally, yet another trial adjournment is contrary to the public interest. The victims in this case have suffered substantial financial losses, while the bankruptcy and liquidation of the

[5] The Government understands that jury selection is scheduled to begin in April.

defendants' business interests create a risk that whatever assets remain will be dissipated or otherwise placed beyond the reach of any restitution order this Court may ultimately enter. Because of these concerns, the Government strongly opposed Patrick James's first request to adjourn trial, which Judge Torres nonetheless granted.

Now, six months later, the public interest in the swift administration of justice is even greater. By the time of the currently scheduled trial, more than one year will have passed since Patrick James and Edward James caused the collapse of First Brands and the corresponding loss of billions of dollars. Any further adjournment of the trial date would cause increasing prejudice to the victims and further delay justice. The public has a significant interest in the prompt resolution of this matter, and trial should proceed on February 9.

* * *

For the foregoing reasons, the Government respectfully submits that the defendant's motion to adjourn trial should be denied.

Respectfully submitted,

JAMES M. MCDONALD
United States Attorney

By: ______________________

Nicholas W. Chiuchiolo
Marguerite B. Colson
Peter J. Davis
212-637-1247 | -2587 | -2468
Assistant United States Attorneys

cc: Defense counsel (by ECF)